STATE of Minnesota, Appellant,

v.

Janet Sue SHRINER, Respondent.

No. A07–181.

Supreme Court of Minnesota.

May 30, 2008.

Rehearing Denied July 14, 2008.

Lori Swanson, Attorney General, St. Paul, MN, James C. Backstrom, Dakota County Attorney, Debra Schmidt, Asst. Dakota County Attorney, Hastings, MN, for appellant.

Jeffrey B. Ring, Minneapolis, MN, for respondent.

Steven Heng, Traffic Safety Resource Prosecutor, Minnesota County Attorneys Association, St. Paul, MN, for amicus curiae Minnesota County Attorneys Assoc.

## OPINION

DIETZEN, Justice.

Appellant State of Minnesota challenges a district court order granting the motion of respondent Janet Sue Shriner (Shriner) to suppress evidence of a warrantless blood draw obtained after she caused a car accident. The court of appeals affirmed, concluding that in order for a warrantless, nonconsensual blood draw to meet the requirements of the Fourth Amendment, there must be probable cause and exigent circumstances as demonstrated by an officer's evaluation of the totality of the circumstances. *State v. Shriner,* 739 N.W.2d 432, 440 (Minn.App.2007). The issue on this appeal is whether the evanescent nature of alcohol in the blood constitutes "single-factor" exigent circumstances sufficient to justify a warrantless blood draw when there is probable cause to arrest a suspect for operating a vehicle in violation of Minn.Stat. § 609.21 (2006). We granted review and now reverse and remand to the district court for proceedings consistent with this opinion.

On May 8, 2006, at approximately 9:26 p.m., Shriner was involved in a car accident when she drove her car into oncoming traffic on McAndrews Road in Burnsville, Minnesota, hit another car in a head-on collision, and continued driving until she was forced to stop by a Burnsville squad car. The squad car bumped Shriner's vehicle, causing it to spin and go onto a cement median. Burnsville police requested that Shriner voluntarily leave her vehicle, but she refused. Police then forcibly removed her from the car after breaking a window and opening the door.

At that point, police observed that Shriner was not injured and that she smelled of alcohol, had blood-shot eyes that were glazed over, and was unable to stand without assistance. An officer then placed Shriner under arrest and put her in the

back seat of his squad car. Shortly thereafter, he learned from other officers at the scene of the accident that the driver of the other vehicle had sustained head and leg injuries. The officer then took Shriner to a nearby hospital for the purpose of obtaining a blood sample. The officer did not invoke the implied-consent procedure or read the implied-consent advisory.

Medical personnel drew a blood sample from Shriner approximately 45 minutes after the accident. The State represented that subsequent analysis of Shriner's blood sample indicated her blood-alcohol content was 0.33.[1] Before directing medical personnel to take the blood sample, the police did not obtain, or attempt to obtain, a search warrant.

The State charged Shriner with seven criminal counts, including first-degree driving while impaired and criminal vehicular operation resulting in bodily harm. Before trial, Shriner moved to have the results of the blood draw suppressed. At the omnibus hearing, Shriner conceded that there was probable cause to believe that she violated the criminal vehicular operation statute, but she argued that the State did not show exigent circumstances that would justify a warrantless, nonconsensual blood draw. The officer who transported Shriner to the hospital for the blood draw admitted that he was not worried that Shriner was "about to slip under the legal limit."

Following the hearing, the district court granted Shriner's motion to suppress, finding that there was probable cause to believe "that a blood alcohol test would result in the discovery of evidence relevant to prosecuting [Shriner] for a violation of

Minn.Stat. § 609.21," but that the State failed to present evidence of exigent circumstances or that an emergency existed justifying a warrantless blood draw. Due to a lack of probable cause to support the charges, the court dismissed the counts of first-degree driving while impaired and criminal vehicular operation resulting in bodily harm.

The court of appeals affirmed the district court in a published 2–1 decision.[2] *State v. Shriner*, 739 N.W.2d 432, 440 (Minn.App.2007). The majority concluded that the "Fourth Amendment of the United States Constitution precludes using the results of a warrantless, nonconsensual blood draw in a criminal prosecution unless law enforcement has probable cause to believe criminal conduct has occurred and there are exigent circumstances in addition to evidence of alcohol consumption." *Id.* The majority applied a "totality-of-the-circumstances" test to determine whether exigent circumstances existed to necessitate conducting the blood draw without a warrant. *Id.* at 438. We granted the State's petition for further review.

### I.

■ The State contends that the district court erred in suppressing the results of the blood draw. "When reviewing a pretrial order on a motion to suppress evidence, we may independently review the facts and determine whether, as a matter of law, the district court erred in suppressing or not suppressing the evidence." *State v. Askerooth*, 681 N.W.2d 353, 359 (Minn.2004).

---

1. There is nothing in the record regarding the analysis of Shriner's blood sample or her blood-alcohol content. Shriner, however, does not dispute the State's representation.

2. The court of appeals determined that the suppression of the blood-alcohol content evidence would have a critical impact on the State's case. *State v. Shriner*, 739 N.W.2d 432, 435 (Minn.App.2007). That issue is not a part of this appeal.

The Fourth Amendment to the United States Constitution provides:

The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

Article I, section 10 of the Minnesota Constitution contains a parallel provision.

■ Taking a person's blood is considered a search under the Fourth Amendment. *Schmerber v. California*, 384 U.S. 757, 767, 86 S.Ct. 1826, 16 L.Ed.2d 908 (1966). It is a basic principle of constitutional law that warrantless searches are presumptively unreasonable. *State v. Licari*, 659 N.W.2d 243, 250 (Minn.2003). "Nevertheless, because the ultimate touchstone of the Fourth Amendment is 'reasonableness,' the warrant requirement is subject to certain exceptions." *Brigham City v. Stuart*, 547 U.S. 398, 403, 126 S.Ct. 1943, 164 L.Ed.2d 650 (2006).

■ One such exception is exigent circumstances. " '[W]arrants are generally required to search a person's home or his person unless 'the exigencies of the situation' make the needs of law enforcement so compelling that the warrantless search is objectively reasonable under the Fourth Amendment.' " *Brigham City*, 547 U.S. at 403, 126 S.Ct. 1943 (alteration in original) (quoting *Mincey v. Arizona*, 437 U.S. 385, 393–94, 98 S.Ct. 2408, 57 L.Ed.2d 290 (1978)). "The U.S. Supreme Court has not

adopted a definite test for determining when exigent circumstances exist." *State v. Gray*, 456 N.W.2d 251, 256 (Minn.1990). The Court, however, has recognized such emergency conditions exist in a few situations, including the hot pursuit of a fleeing felon, the destruction of evidence, an ongoing fire, and the rendering of emergency aid. *Welsh v. Wisconsin*, 466 U.S. 740, 750, 104 S.Ct. 2091, 80 L.Ed.2d 732 (1984); *Gray*, 456 N.W.2d at 256.

■ Initially, when this court discussed whether exigent circumstances existed to justify a warrantless search, we looked to the totality of circumstances and considered six factors that were articulated by the United States Court of Appeals for the D.C. Circuit in the case of *Dorman v. United States*, 435 F.2d 385 (1970).[3] *See State v. Lasley*, 306 Minn. 224, 232, 236 N.W.2d 604, 609 (1975) (citing the six factors outlined in *Dorman* for determining whether "exigent circumstances" justified entering a suspect's home without a warrant). Determining whether exigent circumstances exist under the "totality of the circumstances" is a "flexible approach that encompasses all relevant circumstances." *State v. Hummel*, 483 N.W.2d 68, 73 (Minn.1992) (internal quotation marks omitted).

■ In *State v. Gray*, we refined our jurisprudence regarding exigent circumstances. We concluded "[t]here generally are two types of tests for exigent circumstances: (1) single factor exigent circumstances, and (2) in the absence of any of these factors, a 'totality of the circum-

---

**3.** The six factors we adopted in weighing whether the "totality of the circumstances" create exigent circumstances are: (1) "whether a grave or violent offense is involved"; (2) "whether the suspect is reasonably believed to be armed"; (3) "whether there is strong probable cause connecting the suspect to the offense"; (4) "whether police have strong rea-

son to believe the suspect is on the premises"; (5) "whether it is likely the suspect will escape if not swiftly apprehended"; and (6) "whether peaceable entry was made." *State v. Hummel*, 483 N.W.2d 68, 72–73 (Minn. 1992) (quoting *Gray*, 456 N.W.2d at 256, and citing *Dorman*, 435 F.2d at 392–93).

stances' test." 456 N.W.2d 251, 256 (Minn. 1990). We have described the test for single-factor exigent circumstances as one in which "the existence of *one fact alone* creates exigent circumstances." *In re Welfare of D.A.G.*, 484 N.W.2d 787, 791 (Minn.1992) (emphasis added). It is only when "none of the single factor exigent circumstances is clearly implicated" that we apply a "totality of the circumstances" test to determine whether exigent circumstances are present. *Gray,* 456 N.W.2d at 256; *see also In re Welfare of B.R.K.*, 658 N.W.2d 565, 579 (Minn.2003) ("When a 'single factor' exigent circumstance does not exist, we apply a totality of the circumstances test."); *D.A.G.*, 484 N.W.2d at 791. Thus, this court has acknowledged for nearly 20 years that the existence of one fact alone can create exigent circumstances that justify a warrantless search, and that in such a situation, we do not rely upon the totality of the circumstances in considering whether a warrantless search was proper.

■■ We have recognized single-factor exigent circumstances justifying a warrantless search in cases involving hot pursuit of a fleeing felon, imminent destruction or removal of evidence, protection of human life, likely escape of the suspect, and fire. *Gray,* 456 N.W.2d at 256. More importantly, we have stated that a warrantless search is permissible "when the delay necessary to obtain a warrant might result in the loss or destruction of the evidence." *State v. Richards,* 552 N.W.2d 197, 203 (Minn.1996). Whether exigent circumstances exist is an objective determination, and the individual officer's subjective state of mind is irrelevant. *Brigham City,* 547 U.S. at 404–05, 126 S.Ct.

1943 (holding that whether exigent circumstances existed because the police needed to render emergency aid was an objective determination where the subjective motivation of the officer was irrelevant); *cf. State v. Olson,* 482 N.W.2d 212, 214 (Minn. 1992) (holding that "if there is an objective legal basis" for a search, it will be upheld, "even if the officer * * * conducting the search based his or her action on the wrong ground or had an improper motive"). It is the State's burden to provide facts to support its theory that the evidence "the officer thought was present" would be destroyed or disappear. *See D.A.G.*, 484 N.W.2d at 791 (rejecting State's contention that warrantless entry into home was justified by the imminent destruction of evidence because the State had "not advanced a theory" and had "failed to provide facts" explaining how the drugs the officers saw "would have suddenly disappeared").

### A. *Single-factor exigent circumstances*

The State argues that when police have probable cause to believe that a defendant committed criminal vehicular operation resulting in homicide or injury,[4] they may take a blood draw without a warrant because the evanescent nature of alcohol in the blood creates a single-factor exigent circumstance. The single-factor exigent circumstance the State relies on is the imminent destruction of evidence.

In the landmark case of *Schmerber v. California,* 384 U.S. 757, 758–59, 86 S.Ct. 1826, 16 L.Ed.2d 908 (1966), the United States Supreme Court considered whether the taking of a blood sample from a nonconsenting driver violated his right under

---

**4.** The criminal vehicular operation statute prohibits a person from, among other things, causing the death or injury of another person as a result of operating a motor vehicle "while having an alcohol concentration of 0.08 or more," "while having an alcohol con-

centration of 0.08 or more, as measured within two hours of the time of driving," or in a negligent manner while under the influence of alcohol. Minn.Stat. § 609.21, subds. 1–2b (2006).

the Fourth Amendment to be free of unreasonable searches and seizures. Schmerber, who was the driver of a car involved in an accident, was suspected by an investigating officer at the accident scene to be under the influence of alcohol. *Id.* at 768–69, 86 S.Ct. 1826. At the hospital, the officer placed Schmerber under arrest and, without first obtaining a warrant or Schmerber's consent, directed hospital staff to take a blood sample. *Id.* at 758–59, 768, 86 S.Ct. 1826. The Supreme Court held that the blood tests were admissible, concluding that probable cause existed to arrest the driver, *id.* at 768, 86 S.Ct. 1826, and that

> [t]he officer in the present case * * * might reasonably have believed that he was confronted with an emergency, in which the delay necessary to obtain a warrant, under the circumstances, threatened the destruction of evidence. We are told that the percentage of alcohol in the blood begins to diminish shortly after drinking stops, as the body functions to eliminate it from the system. Particularly in a case such as this, where time had to be taken to bring the accused to a hospital and to investigate the scene of the accident, there was no time to seek out a magistrate and secure a warrant. Given these special facts, we conclude that the attempt to secure evidence of blood-alcohol content in this case was an appropriate incident to petitioner's arrest.

*Id.* at 770–71, 86 S.Ct. 1826 (citation and quotation marks omitted). It is unclear whether the Supreme Court justified the warrantless search because of the "threatened destruction of evidence" caused by the rapid dissipation of alcohol in the defendant's bloodstream or because the search was a reasonable search incident to a lawful arrest.

Then in the case of *Cupp v. Murphy,* 412 U.S. 291, 292–93, 93 S.Ct. 2000, 36 L.Ed.2d 900 (1973), the Supreme Court

considered whether taking scrapings from the fingernails of a defendant, who the police suspected had murdered his wife, violated the Fourth Amendment when the defendant had not been arrested. During an interview with the defendant, officers noticed a dark substance on the defendant's finger that they believed to be blood. *Id.* at 292, 93 S.Ct. 2000. The defendant refused a request for a sample of his fingernail scrapings and immediately placed his hands behind his back and appeared to rub them together. *Id.* at 296, 93 S.Ct. 2000. He then placed his hands in his pockets, at which point the officers heard "a metallic sound, such as keys or change rattling." *Id.* (internal quotation marks omitted). The officers detained the defendant and, without first obtaining a warrant, took a sample from under his fingernails. *Id.* at 292–93, 93 S.Ct. 2000. This sample contained skin and blood cells from the victim. *Id.* at 292, 93 S.Ct. 2000. Relying in part on *Schmerber,* the Court upheld the search, concluding that the police had probable cause to arrest the suspect for murder, *id.* at 293, 93 S.Ct. 2000, and were "justified" in subjecting him "to the very limited search *necessary to preserve the highly evanescent evidence* they found under his fingernails." *Id.* at 296, 93 S.Ct. 2000 (emphasis added).

Subsequent cases of the Supreme Court have recognized *Schmerber* as a case in which exigent circumstances justified a warrantless search. *See Winston v. Lee,* 470 U.S. 753, 759, 105 S.Ct. 1611, 84 L.Ed.2d 662 (1985) (discussing *Schmerber* and explaining that "[b]ecause the case fell within the exigent-circumstances exception to the warrant requirement, no warrant was necessary"); *Welsh,* 466 U.S. at 750, 104 S.Ct. 2091 (discussing examples of exigent circumstances the Supreme Court has recognized and citing *Schmerber* as one such example, based on the "destruction of evidence").

This court has also concluded that a warrantless blood draw is justified if supported by probable cause and exigent circumstances. *State v. Aguirre*, 295 N.W.2d 79, 81 (Minn.1980). Further, we have upheld warrantless blood draws in cases involving the offense of criminal vehicular homicide when exigent circumstances existed that required immediate action to prevent the imminent destruction of evidence. *See id.* at 82; *State v. Oevering*, 268 N.W.2d 68, 74 (Minn.1978).

In *Oevering*, we rejected a Fourth Amendment challenge to the admission of blood-alcohol content evidence when a blood sample was taken without the defendant's consent or a warrant and when the officer had probable cause to believe that the defendant, while under the influence of alcohol, had caused a traffic accident resulting in a fatality. 268 N.W.2d at 69, 74. Applying the rule articulated by the Supreme Court in *Cupp*, we stated that the blood draw could be conducted without a warrant if, among other things, "the evidence sought will be forever lost absent the search." *Id.* at 73. We stated that "it is beyond question that with the passage of time, normal physiological functions eliminate the alcohol content of an inebriate's blood." *Id.* at 74. We concluded that, due to the passage of time after the accident, immediate action was required to avoid the loss of blood-alcohol content evidence. *Id.*

Two years later in *Aguirre*, we held that a nonconsensual, warrantless removal of a suspect's blood did not violate the Fourth Amendment when an officer "had probable cause to believe that defendant driver was not only intoxicated but had just committed the felony offense of criminal negligence resulting in death." 295 N.W.2d at 82 (citing Minn.Stat. § 609.21 (1978)). We reasoned that the officer was confronted with a situation in which "he knew that it was essential that he obtain the blood sample without delay and without regard to whether defendant would consent to the removal of a blood sample." *Id.*

We did not use the terminology "single-factor exigent circumstances" or "totality of the circumstances" in either *Oevering* or *Aguirre*. But we had not adopted the two separate tests for exigent circumstances until after these cases were decided. *See Gray*, 456 N.W.2d at 256 (first recognizing in 1990 the distinction between single-factor exigent circumstances and the totality of the circumstances test for determining exigent circumstances). Instead, *Oevering* and *Aguirre* rested on the determination that "the evidence sought will be forever lost absent the search" because "with the passage of time, normal physiological functions eliminate the alcohol content of an inebriate's blood." *Oevering*, 268 N.W.2d at 73–74; *see also Aguirre*, 295 N.W.2d at 82 (finding it was "essential" the officer obtain the blood sample without regard to whether the defendant would consent to the blood draw). But our analysis in *Oevering* and *Aguirre* still focused on the imminent destruction of evidence—the rapid dissipation of alcohol content in the defendant's bloodstream was the dispositive factor on which we based our conclusion that evidence in those cases would be lost without an immediate search. Consequently, our holdings in *Oevering* and *Aguirre* support the conclusion that the rapid dissipation of alcohol in the bloodstream may be a single-factor exigent circumstance based on the imminent destruction of evidence.

In *State v. Paul*, this court held that the police, who were in hot pursuit of a suspected DWI offender, could make a warrantless entry into the defendant's home in order to effectuate arrest. 548 N.W.2d 260, 265 (Minn.1996). We concluded, among other things, that the rapid dissipation of alcohol in the bloodstream constitutes a single-factor exigent circumstances

exception to the warrant requirement. Specifically, we found that "the need to preserve evidence of [the defendant's] blood alcohol level is a compelling exigent circumstance under the 'destruction of evidence' exception to the warrant requirement first recognized [in *Schmerber*]." *Id.* at 266. We further noted, in summarizing *Schmerber*, that the warrantless removal of blood is "necessary to prevent the destruction of the most probative evidence of [a defendant's] offense" because "'the percentage of alcohol in the blood begins to diminish shortly after drinking stops, as the body functions to eliminate it from the system.'"[5] *Id.* at 267 (quoting *Schmerber*, 384 U.S. at 770, 86 S.Ct. 1826); *see also State v. Heaney*, 689 N.W.2d 168, 173 n. 2 (Minn.2004) (describing in dicta that *Schmerber* and *Oevering*, "due to the natural exigency involved in obtaining blood-alcohol evidence, recognize the power of a peace officer to compel a blood sample from a driver where there is probable cause to believe the driver has violated a criminal vehicular operation law"); *State v. Speak*, 339 N.W.2d 741, 745 (Minn.1983) (holding "[e]xigent circumstances were clearly present" that justified warrantless, nonconsensual breathalyzer test where defendant was suspected of fatally hitting pedestrian while driving under the influence of alcohol).

■ Consequently, we conclude that when officers have probable cause to believe a defendant has committed the offense of criminal vehicular homicide or operation under Minn.Stat. § 609.21, it is important that the defendant's blood be tested within 2 hours of the accident causing injury to or the death of another.[6] With every passing minute, the most probative evidence of this crime is subjected to destruction by the body's natural processes. The rapid, natural dissipation of alcohol in the blood creates single-factor exigent circumstances that will justify the police taking a warrantless, nonconsensual blood draw from a defendant, provided that the police have probable cause to believe that defendant committed criminal vehicular operation.[7]

5. The dissent asserts that we "did not mention a single-factor exigent circumstance" in *Paul*. But in *Paul* we expressly referred to and analyzed the destruction of evidence exception to the warrant requirement, which is a single-factor exigent circumstance. *See* 548 N.W.2d at 266–67. Thus, the dissent's argument that we "relied on the totality of the circumstances to support the conclusion that there was no time to get a warrant" is contrary to the record in *Paul*. Specifically, the fact that we stated the defendant's blood-alcohol level "might have dissipated while a warrant was being obtained," as opposed to "would have" dissipated, does not indicate that we based our determination that evidence would have been lost while a warrant was obtained on anything other than the fact that the percentage of alcohol in the body is reduced shortly after drinking stops because of the body's natural processes. *See id.* at 267. We agree that *Paul* also addressed another single-factor exigent circumstance, the hot pursuit of a fleeing felon. But this court's consideration of the imminent destruction of evidence was limited to consideration of a single factor—the rapid dissipation of alcohol in the defendant's bloodstream. *See id.* at 266–67. Thus, the court relied only on the rapid dissipation of alcohol to support its conclusion that there was no time to get a warrant based on the imminent destruction of evidence.

6. The criminal vehicular homicide and operation statute prohibits a person from, among other things, causing bodily harm to another person as a result of operating a motor vehicle "while having an alcohol concentration of 0.08 or more, as measured within two hours of the time of driving." Minn.Stat. § 609.21, subd. 2b.

7. We express no opinion on whether the evanescent nature of blood-alcohol content is sufficient, in and of itself, to create single-factor exigent circumstances that would justify the police taking a warrantless blood draw when they have probable cause to believe that a defendant has committed any other crime where blood-alcohol content would be highly probative evidence.

## B. *Totality of the circumstances*

Shriner argues that this court should look at the totality of the circumstances to determine whether exigent circumstances exist to support a warrantless blood draw. Shriner contends that the holding of *Schmerber* requires this court to look at more than the evanescent nature of blood-alcohol content in determining whether exigent circumstances exist that would justify a warrantless blood draw. Shriner relies heavily on *State v. Rodriguez*, 156 P.3d 771 (Utah 2007), to support her argument. There the Utah Supreme Court concluded that *Schmerber* did not create a single-factor exception to the warrant requirement, that the availability of telephonic warrants cuts against adopting a single-factor exigency exception, and that a single-factor exigency exception would deter the pursuit of progressive approaches to warrant acquisition. *Id.* at 776, 778–79.

We disagree. We have concluded in previous cases that there are two separate tests for exigent circumstances, and that if one factor creates exigent circumstances, we do not review other factors under a totality of the circumstances test to determine whether exigent circumstances exist. *B.R.K.*, 658 N.W.2d at 579; *D.A.G.*, 484 N.W.2d at 791; *Gray*, 456 N.W.2d at 256. In *D.A.G.* we stated that the existence of "one fact alone" may create exigent circumstances under the single-factor test. 484 N.W.2d at 791. It is undisputed that as a result of the body's physiological processes, the blood-alcohol content in a defendant's blood dissipates with the passage of every minute. Thus, the rapid dissipation of blood-alcohol content caused by the body's natural processes is a single factor that creates the exigent circumstances in the case of criminal vehicular operation to justify a warrantless blood draw.[8]

*Schmerber* does not prohibit our conclusion that the rapid dissipation of alcohol in the bloodstream can create a single-factor exigent circumstance.[9] First, the Supreme Court has stated in subsequent decisions that its holding in *Schmerber* justifies a warrantless blood draw based on the imminent destruction of alcohol caused by the natural processes of the body. In *Skinner v. Railway Labor Executives' Ass'n*, 489 U.S. 602, 609, 624, 109 S.Ct. 1402, 103 L.Ed.2d 639 (1989), the Supreme Court found federal regulations that required toxicological testing of the blood or urine of all railroad employees directly involved in any train accident that resulted in a

---

**8.** Therefore, we reject the dissent's conclusion that "the totality of the circumstances" must be reviewed in this case and that "when a police officer has probable cause to believe that a suspect has committed criminal vehicular operation, a blood sample may be taken without the suspect's consent if the officer has a reasonable belief that the delay necessary to obtain a warrant, under the circumstances, threatens the destruction of evidence."

**9.** The dissent contends that the holding of *Schmerber* compels the conclusion that a totality of circumstances test must be employed on a case-by-case basis to determine whether a warrantless blood draw is reasonable when the police suspect a person of driving while under the influence of alcohol. The dissent notes that the judgment of *Schmerber* was limited "only on the facts of the present rec-

ord" and that the Supreme Court stated, "[t]hat we today hold that the Constitution does not forbid the State's minor intrusions into an individual's body under stringently limited conditions in no way indicates that it permits more substantial intrusions, or intrusions under other conditions." 384 U.S. at 774, 86 S.Ct. 1826. This language, however, is properly analyzed as indicating that *Schmerber* should not be viewed as authorizing the police to take warrantless blood draws in circumstances other than when they suspect a person of drunk driving, as opposed to compelling the conclusion that the Supreme Court held in *Schmerber* that a "totality of the circumstances" approach must be used in determining whether the police can take a warrantless blood draw when they have probable cause to believe someone has engaged in drunken driving.

reportable injury or damage to railroad property of $500,000 or more did not violate the Fourth Amendment and that a warrant was not a prerequisite to such searches of railroad employees. The Court cited *Schmerber,* 384 U.S. at 770–71, 86 S.Ct. 1826, to support the conclusion that the purposes behind requiring post-accident blood testing of railroad employees would be frustrated by requiring a warrant because "alcohol and other drugs are eliminated from the bloodstream at a constant rate, and blood and breath samples taken to measure whether these substances were in the bloodstream when [an accident] occurred must be obtained as soon as possible." *Skinner,* 489 U.S. at 623, 109 S.Ct. 1402 (citation omitted). Af-

ter noting that some drugs are still detectable in the body "for longer periods of time," the Court concluded that "the delay necessary to procure a warrant nevertheless may result in the destruction of valuable evidence." [10] *Id.; see also South Dakota v. Neville,* 459 U.S. 553, 559, 103 S.Ct. 916, 74 L.Ed.2d 748 (1983) (indicating that "*Schmerber* * * * clearly allows a State to force a person suspected of driving while intoxicated to submit to a blood-alcohol test").

Further, the view urged by Shriner, which was also adopted by the court of appeals in its decision, is the minority view of *Schmerber.* Other courts have interpreted *Schmerber* as concluding that the naturally rapid dissipation of alcohol in the bloodstream creates an emergency that justifies a warrantless blood draw.[11]

**10.** The dissent contends that our reliance on *Skinner* is misplaced, arguing that the Supreme Court in *Skinner* cited factors other than the rapid dissipation of alcohol in the bloodstream to uphold the regulations at issue, and therefore examined "the totality of the particular circumstances" and not a single factor. But in *Skinner,* the Supreme Court did not mention the other factors identified by the dissent, such as the narrowness of the regulations at issue or that a private company would set the testing process in motion, in its analysis of *Schmerber* or in its discussion of whether blood-alcohol content evidence would be lost in the time it takes to get a warrant. *See Skinner,* 489 U.S. at 623, 109 S.Ct. 1402. Thus, these additional factors do not indicate that the Supreme Court relied on anything other than the rapid dissipation of alcohol in the bloodstream to support its conclusion that blood-alcohol content evidence would be lost in the time it takes to get a warrant.

**11.** *See United States v. Eagle,* 498 F.3d 885, 892 (8th Cir.2007) (upholding warrantless blood draw and quoting *Schmerber,* 384 U.S. at 770–71, 86 S.Ct. 1826, as support for the conclusion that "[e]xigent circumstances exist when there is a risk of destruction of evidence, including a risk that a defendant's blood-alcohol content will dissipate because 'the body functions to eliminate [alcohol] from the system'" (second alteration in original)); *United States v. Reid,* 929 F.2d 990,

993–94 (4th Cir.1991) (relying on *Schmerber,* 384 U.S. at 770–71, 86 S.Ct. 1826, and *Skinner,* 489 U.S. at 623, 109 S.Ct. 1402, for the proposition that warrants are not required for police to administer breathalyzer tests because, due to the constant rate at which alcohol is eliminated from the bloodstream, "[t]ime is what is lacking in these circumstances"); *State v. Cocio,* 147 Ariz. 277, 709 P.2d 1336, 1344–45 (1985) (citing *Schmerber,* 384 U.S. at 770, 86 S.Ct. 1826, to support conclusion that warrantless blood sample was taken based on exigent circumstances due to the imminent destruction of evidence and indicating that dissipation of alcohol in the blood presents "even more compelling [exigency] than *Cupp* since alcohol in a suspect's blood is certain to disappear while the physical evidence on defendant in *Cupp* was only very likely to disappear while a search warrant was obtained"); *State v. Entrekin,* 98 Hawai'i 221, 47 P.3d 336, 348 (2002) (quoting *Schmerber,* 384 U.S. at 770, 86 S.Ct. 1826, to support conclusion that under state constitution "exigent circumstances were clearly present" because "[i]t is undisputed that 'the percentage of alcohol in the blood begins to diminish shortly after drinking stops, as the body functions to eliminate it from the system'"); *State v. Woolery,* 116 Idaho 368, 775 P.2d 1210, 1212 (1989) ("In the instant situation [where a warrantless, nonconsensual blood draw is sought by police], the destruction of the evidence by metabolism of alcohol

When faced with the same issue presented here, the Wisconsin Supreme Court in *State v. Bohling* determined that the evanescent nature of alcohol in the blood was sufficient to constitute exigent circumstances justifying a warrantless search. 173 Wis.2d 529, 494 N.W.2d 399, 406 (1993). The Wisconsin Supreme Court explained that

> *Schmerber* can be read in either of two ways: (a) that the rapid dissipation of alcohol in the bloodstream alone constitutes a sufficient exigency for a warrantless blood draw to obtain evidence of intoxication following a lawful arrest for a drunk driving related violation or crime * * *; or (b) that the rapid dissipation of alcohol in the bloodstream, coupled with an accident, hospitalization, and the lapse of two hours until arrest, constitute exigent circumstances for such a blood draw.

*Id.* at 402. The *Bohling* court concluded that the first of these readings of *Schmerber* was the more appropriate. *Id.*

The *Bohling* court based its conclusion on "(1) a logical reading of *Schmerber*, (2) the Supreme Court's decision in *Skinner* * * *, (3) interpretations of *Schmerber* by other courts, and (4) an examination of [the State's] interest in enforcing its drunk driving laws." *Id.* Specifically related to the first reason, the Wisconsin Supreme Court noted that "[a] logical analysis of the *Schmerber* decision indicates that the exigency of the situation presented was caused solely by the fact that the amount of alcohol in a person's bloodstream diminishes over time." *Id.* While the Supreme Court noted other facts in *Schmerber*, such as the fact that an accident occurred and

that the defendant was taken to the hospital, these other facts "did not increase the risk that evidence of intoxication would be lost." *Id.* We agree with the Wisconsin Supreme Court's analysis of *Schmerber*.

The dissent argues we have abandoned the requirement that in invoking "the imminent destruction or removal of evidence" as a single-factor exigency, the State must explain why the peace officer could reasonably believe that evidence would be destroyed. Because we have not abandoned this requirement, the dissent's warning rings hollow. We are simply recognizing that when the police have probable cause to suspect a defendant committed criminal vehicular operation, it is objectively reasonable to conclude that the alcohol content in a defendant's blood dissipates with the passage of time due to the human body's natural, physiological processes. Our existing jurisprudence has already recognized this physiological process. Today we conclude that in the case of criminal vehicular operation the undisputed rapid dissipation of alcohol in the defendant's blood creates a single-factor exigent circumstance.

The dissent also argues that "it is the length of the delay" in obtaining a warrant "that determines whether the evidence will disappear." This argument rests on the contention that exigent circumstances are not present if it is possible to get a warrant before all the evidence is destroyed. But our existing jurisprudence has recognized that a warrantless search is justified based on the imminent destruction of evidence when there is the potential loss of evidence during the delay necessary to obtain a warrant. *See Richards,* 552

in the blood provides an *inherent exigency* which justifies the warrantless search." (emphasis added)); *State v. Baker,* 502 A.2d 489, 493 (Me.1985) (indicating that "[t]he bodily process that eliminates alcohol * * * provides exigent circumstances obviating the need to

obtain a warrant prior to administering a blood test" without any evaluation of the time needed to obtain a warrant or the fact that police arrived on the scene soon after the accident).

N.W.2d at 203. Specifically, when the police have probable cause to believe a person has committed the serious crime of criminal vehicular operation, there is the potential loss of all blood-alcohol content evidence, and the ongoing, actual loss of such evidence with every passing minute from the time the accident occurred until the blood draw is taken. Because it is undisputed that this loss of the most probative evidence of criminal vehicular operation occurs during the time it takes to obtain a warrant, exigent circumstances are present based on the imminent destruction of evidence.

Further, requiring law enforcement to consider other factors places an unreasonable burden on law enforcement. For instance, though the officer may be familiar with the area in which the accident occurred, the officer has no control over how long it would take to travel to a judge or the judge's availability. The officer also may not know the time of the suspect's last drink, the amount of alcohol consumed, or the rate at which the suspect will metabolize alcohol. Finally, an officer cannot know how long it will take to obtain the blood sample once the suspect is brought to the hospital.[12] Under a totality of the circumstances test, an officer would be called upon to speculate on each of these considerations and predict how long the most probative evidence of the defendant's blood-alcohol level would continue to exist before a blood sample was no longer reliable.

Shriner also contends that police may obtain telephonic warrants quickly and, therefore, the police can easily obtain the relevant evidence they need with a warrant. Put another way, Shriner contends that the use of telephonic warrants makes any exigency disappear because the police will be able to obtain a blood sample well before the evidence is entirely gone. But the officer facing the need for a telephonic warrant cannot be expected to know how much delay will be caused by following the procedures necessary to obtain such a warrant.[13] And during the time taken to obtain a telephonic warrant, it is undisputed that the defendant's body is rapidly metabolizing and dissipating the alcohol in the defendant's blood. We do not believe that the possibility of obtaining a telephonic warrant is sufficient to overcome the single-factor exigent circumstances of the rapid dissipation of alcohol in the defendant's blood in this case. Shriner also raises the possibility that a blood draw may be taken hours after the accident and that qualified scientists can extrapolate the results back to the time of the accident. But respondent presents no evidence to support this contention and, therefore, we decline to address it.

## II.

We hold that when law enforcement has probable cause to believe a defendant has committed the offense of criminal vehicular homicide or operation under Minn. Stat. § 609.21 (2006), it is important that the defendant's blood be tested within 2 hours of the accident causing injury to or the death of another. The rapid, natural dissipation of alcohol in the blood creates single-factor exigent circumstances that will justify the police taking a warrantless, nonconsensual blood draw from a defendant, provided that the police have probable cause to believe that defendant

12. We note that under the facts of this case, even though Shriner was arrested approximately half a mile from a hospital, it still took 45 minutes to obtain her blood sample.

13. A telephonic warrant does not eliminate the need for documentation. A duplicate original warrant must be prepared and read to the judge. Minn. R.Crim. P. 36.03.

committed criminal vehicular homicide or operation.

Reversed and remanded.

MEYER, Justice (dissenting).

I respectfully dissent. The majority today has created a new rule of law that erodes the right of citizens in Minnesota to be secure from unreasonable searches and seizures under the United States and Minnesota Constitutions. I would proceed with a more cautious approach, apply our long-standing rule of law that a search and seizure conducted without a warrant is per se unreasonable, and hold that when a police officer has probable cause to believe that a suspect has committed criminal vehicular operation, a blood sample may be taken without the suspect's consent if the officer has a reasonable belief that the delay necessary to obtain a warrant, under the circumstances, threatens the destruction of evidence.

The charges in this case stem from an incident on May 8, 2006, at approximately 9:26 p.m., when the complaint alleges respondent Janet Sue Shriner was involved in an accident in the area of McAndrews Road and 141st Street in Burnsville, Minnesota. The complaint alleges that Shriner drove into oncoming traffic, hit another car head-on, and then continued driving, at times on the sidewalk. The driver of the other car was taken to the hospital with head and leg injuries.

Burnsville police were dispatched after the accident to find respondent. Respondent was finally stopped when a police car bumped her car and caused it to spin and go up onto a cement median. Respondent refused to get out of her car, and the police forcibly removed her from her car after breaking a window and opening the door. The police observed that respondent had bloodshot, glazed-over eyes, smelled of alcohol, and could not stand on

her own. Respondent did not appear to be injured.

Respondent was arrested. She was then taken to a nearby hospital where her blood was drawn. The police did not ask for respondent's consent to draw blood, did not give respondent an implied-consent advisory before ordering her blood drawn, and did not obtain a search warrant for the blood draw. The blood draw occurred approximately 45 minutes after the accident. Subsequent analysis of respondent's blood showed a blood alcohol content of 0.33.

Appellant State of Minnesota charged respondent with: (1) two alternative counts of first-degree driving while impaired, in violation of Minn.Stat. §§ 169A.20, subds. 1(1) and 1(5) (2006), and 169A.24 (2006); (2) fleeing a peace officer in a motor vehicle, in violation of Minn.Stat. § 609.487, subd. 3 (2006); (3) criminal vehicular operation, in violation of Minn.Stat. § 609.21, subd. 2b(4) (2006); (4) driving after license cancellation, in violation of Minn.Stat. § 171.24, subd. 5 (2006); (5) leaving the scene of an accident, in violation of Minn.Stat. § 169.09, subds. 1 and 14(b) (2006); and (6) reckless driving, in violation of Minn.Stat. § 169.13, subd. 1 (2006).

Respondent filed a motion to suppress the evidence discovered as a result of the warrantless removal of her blood. The district court held a contested omnibus hearing on respondent's motion on November 22, 2006. Respondent agreed that the police had probable cause to draw her blood, but she contended the withdrawal was unconstitutional because the police did not show exigent circumstances existed to justify a warrantless seizure.

On January 16, 2007, the district court granted respondent's motion to suppress the evidence discovered as a result of the blood draw. The district court ruled that the seizure was illegal because neither exi-

gent circumstances nor evidence that the officers might have reasonably believed that they were confronted with an emergency existed. The district court ordered the evidence obtained as a result of the warrantless removal of respondent's blood suppressed, and it dismissed the counts of driving while impaired based upon a blood-alcohol concentration of .08 or greater and criminal vehicular operation for lack of probable cause to proceed to trial.

In its appeal of the pretrial order by a prosecuting attorney, the State argued that the district court erred when it granted respondent's motion to suppress. It contended that many cases of both this court and the court of appeals hold that the evanescent nature of blood-alcohol evidence alone supports a finding of exigent circumstances so that a warrantless blood draw is legal when the police have probable cause to believe a defendant violated the criminal vehicular operation statutes.

The court of appeals affirmed the suppression of the evidence obtained from respondent's blood draw. *State v. Shriner*, 739 N.W.2d 432, 439–40 (Minn.App.2007). The court of appeals ruled that in order for a warrantless, nonconsensual blood draw to meet the requirements of the Fourth Amendment, there must be probable cause and exigent circumstances. *Id.* at 436. After discussing several opinions by this court,[1] it found that "[a] careful review of our caselaw indicates that although there are comments which lend some support to the state's position, none has expressly held that the presence of alcohol is a per se exigent circumstance sufficient to justify a warrantless blood draw." *Id.* at 437. After reviewing decisions from other jurisdictions, the court of appeals decided that whether exigent circumstances exist must be determined based upon the totality of the circumstances, and that the question was whether "there are factors, together with the suspected presence of alcohol, that constitute exigent circumstances sufficient to justify the warrantless blood draw." *Id.* at 438. Such factors include the amount of time that has elapsed since the accident, the potential unavailability of the defendant once he or she is taken to the hospital for treatment, and the difficulty in obtaining a warrant. *Id.* at 436–37.

The court of appeals then examined the facts of the case and determined that exigent circumstances did not exist. *Id.* at 438–40. It noted the absence of other factors that would support a finding of exigent circumstances, such as respondent being injured, or the arresting officer having competing responsibilities because he or she was responsible for other injured people or the crime scene. *Id.* The court of appeals concluded that, "[b]ased on a two-hour rule to establish guilt" under the DWI and criminal vehicular operations statute, "the question becomes whether a warrant could reasonably have been obtained within a timeframe that would not have compromised the test results." *Id.* at 438. The court of appeals then noted that a warrant could have been obtained directly by the police from a judge over the telephone, and it cited a case where a telephone warrant was obtained at night in a little more than an hour. *Id.* at 439. Because the record was silent on the local warrant process and the State did not claim there is any difficulty in obtaining a nighttime or telephone warrant, the court of appeals was unwilling to assume that the time needed to obtain a warrant created exigent circumstances. *Id.* at 440.

1. The court of appeals discussed *State v. Heaney*, 689 N.W.2d 168 (Minn.2004); *State v. Paul*, 548 N.W.2d 260 (Minn.1996); *State v.* *Aguirre*, 295 N.W.2d 79 (Minn.1980); and *State v. Oevering*, 268 N.W.2d 68 (Minn.1978). *Shriner*, 739 N.W.2d at 436–37.

On appeal to this court, the State argues that the law enforcement community has been operating under a "bright-line rule" that the dissipation of alcohol alone creates a sufficient exigency to dispense with the warrant requirement in criminal vehicular operation cases. Indeed, at oral argument, the State represented that law enforcement personnel in this state routinely take warrantless blood draws in criminal vehicular operation cases on the belief that they need make no showing that it is impractical to obtain a warrant. The State argues that the U.S. Supreme Court in *Schmerber v. California*, 384 U.S. 757, 86 S.Ct. 1826, 16 L.Ed.2d 908 (1966), announced a "single-factor" exigent circumstance exception to the warrant requirement, this "single-factor" exigency was subsequently incorporated into the doctrine justifying warrantless body searches in the case of *Cupp v. Murphy*, 412 U.S. 291, 93 S.Ct. 2000, 36 L.Ed.2d 900 (1973), and this court subsequently adopted a single-factor test for warrantless blood draws in reliance on *Schmerber* and *Cupp*.

Shriner contends that neither the U.S. Supreme Court nor this court has held that the dissipation of alcohol dispenses with the warrant requirement altogether. Shriner asserts that *Schmerber* did not categorically recognize blood-alcohol exigency. Rather, Shriner contends, *Schmerber* announced a more prudent rule of law that considers whether the facts of a particular case justify a warrantless blood draw.

The question, therefore, is whether the State is correct that *Schmerber*, *Cupp*, and this court's precedent have already concluded that a single-factor exigency applies to warrantless blood draws. For the reasons set forth below, I would conclude that U.S. Supreme Court and Minnesota precedent do not answer the question in favor of the State and, moreover, the holding in *Schmerber* compels the conclusion that a totality of the circumstances test remains the appropriate test in this case.

The Fourth Amendment to the United States Constitution guarantees "[t]he right of the people to be secure in their persons * * * against unreasonable searches and seizures." This right is guaranteed by the requirement that a police officer obtain a warrant based on probable cause from a neutral and detached magistrate. *United States v. Place*, 462 U.S. 696, 701, 103 S.Ct. 2637, 77 L.Ed.2d 110 (1983); *Schmerber*, 384 U.S. at 770, 86 S.Ct. 1826. A search conducted without a warrant is per se unreasonable. *Place*, 462 U.S. at 701, 103 S.Ct. 2637. There are a few well-recognized exceptions to the requirement of a warrant, one of which is the situation of exigent circumstances. *See id.*

In *Schmerber v. California*, the United States Supreme Court applied a totality of the circumstances test to determine whether exigent circumstances justified a warrantless blood draw to preserve evidence of the suspect's blood-alcohol content. 384 U.S. at 766–72, 86 S.Ct. 1826. Considering the "special facts" that "the percentage of alcohol in the blood begins to diminish shortly after drinking stops," *id.* at 770–71, 86 S.Ct. 1826, that the driver and passenger were injured and needed medical assistance, *see id.* at 758 n. 2, 770–71, 86 S.Ct. 1826, that the officer needed to investigate the scene of the accident, *id.* at 770–71, 86 S.Ct. 1826, and that these last two tasks would take a considerable amount of time, *see id.*, the Court determined the officer was reasonable in believing "he was confronted with an emergency, in which the delay necessary to obtain a warrant, under the circumstances, threatened 'the destruction of evidence,'" *id.* at 770, 86 S.Ct. 1826 (quoting *Preston v. United States*, 376 U.S. 364, 367, 84 S.Ct. 881, 11 L.Ed.2d 777 (1964)). In concluding that the defendant's Fourth and Four-

teenth Amendment rights to be free of unreasonable searches and seizures had not been violated, however, the Court made a point of considering all of the facts in the case:

It bears repeating, however, that we reach this judgment only on the facts of the present record. The integrity of an individual's person is a cherished value of our society. That we today hold that the Constitution does not forbid the State's minor intrusions into an individual's body under *stringently limited conditions* in no way indicates that it permits more substantial intrusions, or intrusions under other conditions.

*Id.* at 772, 86 S.Ct. 1826 (emphasis added). *Schmerber* clearly does not support a conclusion that a single-factor exigent circumstances exception to the warrant requirement is available simply because of the "rapid, natural dissipation of alcohol in the blood." Rather, *Schmerber* calls for an individualized determination, based on all the circumstances, of whatever exigent circumstances are present.

The majority asserts that "the Supreme Court has stated in subsequent decisions that its holding in *Schmerber* justifies a warrantless blood draw based on the imminent destruction of alcohol caused by the natural processes of the body," citing decisions in *Skinner v. Ry. Labor Executives' Ass'n,* 489 U.S. 602, 623, 109 S.Ct. 1402, 103 L.Ed.2d 639 (1989), and *South Dakota v. Neville,* 459 U.S. 553, 559, 103 S.Ct. 916, 74 L.Ed.2d 748 (1983). The majority's reliance on these two decisions to justify finding exigent circumstances based only on the natural dissipation of alcohol in the bloodstream is entirely misplaced. In *Skinner,* the Court addressed the issue of whether the government's need to monitor compliance with restrictions on certain railway employees' use of alcohol and drugs justified warrantless blood and urine tests for all employees involved in an accident or other defined

incident, without individualized suspicion. 489 U.S. at 609, 621, 109 S.Ct. 1402. The case was brought as a facial challenge to regulations promulgated by the Federal Railroad Administration, *id.* at 606, 109 S.Ct. 1402, and therefore what constitutes "exigent circumstances" was not at issue. The *Skinner* Court cited *Schmerber* for the propositions that alcohol is eliminated from the bloodstream at a constant rate and that blood and breath samples must therefore be taken as soon as possible after a triggering event. *Id.* Other circumstances contributed to the *Skinner* Court's conclusion that the regulations were constitutional: the regulations narrowly defined the circumstances in which testing could be imposed on employees, *id.* at 622, 109 S.Ct. 1402; employees certainly knew well before any testing what these circumstances were, *id.;* private railroad supervisors would be setting the testing process in motion, and it would be unreasonable to impose " 'unwieldy warrant procedures' " upon persons who, unlike law enforcement, are not familiar with such procedures, *id.* at 623–24, 109 S.Ct. 1402 (quoting *O'Connor v. Ortega,* 480 U.S. 709, 722, 107 S.Ct. 1492, 94 L.Ed.2d 714 (1987)). This is not a single factor, but the totality of the particular circumstances.

In *Neville,* the Supreme Court's conclusion that "*Schmerber* * * * clearly allows a State to force a person suspected of driving while intoxicated to submit to a blood-alcohol test" results from its analysis of *Schmerber's* holding on the Fifth Amendment challenge to the blood test. 459 U.S. at 559, 103 S.Ct. 916. *Neville* rejected the claim that admission of evidence of refusal violates the privilege against self-incrimination. *Id.* at 564, 103 S.Ct. 916. *Neville* clearly did not hold that *Schmerber* was intended to create a single-factor exigency.

Nor does this court's precedent. We have recognized two tests for exigent circumstances: "single factor exigent circumstances, and * * * 'totality of the circumstances.'" *State v. Gray*, 456 N.W.2d 251, 256 (Minn.1990). We have said that "imminent destruction or removal of evidence" is one of those single-factor situations. *In re Welfare of D.A.G.*, 484 N.W.2d 787, 791 (Minn.1992); *State v. Hummel*, 483 N.W.2d 68, 72 (Minn.1992) (describing the single-factor test as "a situation in which a single matter, such as a fleeing felon or danger to persons or evidence, is highly compelling"); *Gray*, 456 N.W.2d at 256 (citing *Schmerber*, 384 U.S. at 770–71, 86 S.Ct. 1826). We have said in dicta that *Schmerber* "recognize[s] the power of a peace officer to compel a blood sample from a driver where there is probable cause to believe the driver has violated a criminal vehicular operation law." *State v. Heaney*, 689 N.W.2d 168, 173 n. 2 (Minn. 2004).

The majority insists that if the single-factor test is met, we do not need to consider the totality of the circumstances. My disagreement with the majority is over whether the "single-factor" test for "imminent destruction or removal of evidence" can be met simply because alcohol dissipates in the bloodstream. Until today, this court has never abandoned the requirement that in invoking "imminent destruction or removal of evidence" as a single-factor exigency, the State must explain why the peace officer could reasonably believe that the evidence would "suddenly disappear[ ]." *D.A.G.*, 484 N.W.2d at 791 (finding the State had "wholly failed to provide facts to support the existence of exigent circumstances under the 'single factor' test"). Focusing on the "loss of [blood-alcohol content] evidence with every passing minute from the time the accident occurred until the blood draw is taken,"

the majority fails to accord any attention to the length of delay occasioned by fulfilling the warrant requirement. Yet it is the length of the delay that determines whether the evidence will disappear. The majority asserts that "it is undisputed that this loss of the most probative evidence of criminal vehicular operation occurs during the time it takes to obtain a warrant." I disagree. A blood draw can never be obtained at the precise moment of the accident. As a result, in any case where blood-alcohol content evidence is crucial, an expert witness must extrapolate from the results of the test to determine what the blood-alcohol content was at the moment of the accident. Nothing in this record establishes that a blood draw taken 45 minutes after the accident, as it was in Shriner's case, would be more probative than a blood draw taken 2 hours after the accident.

When addressing the constitutionality of taking blood samples without a warrant, this court has consistently taken into account all circumstances that inform the question of whether a peace officer could reasonably believe there was a risk of "imminent destruction or removal of evidence." In *State v. Oevering*, 268 N.W.2d 68, 74 (Minn.1978), this court concluded that blood alcohol evidence would have been lost not only because alcohol dissipates with the passage of time, but also because more than 4 hours had passed since the accident.[2] In *State v. Storvick*, 428 N.W.2d 55, 60–61 (Minn.1988) where the warrantless entry into a suspect's residence was at issue, the police officers' objective belief that a blood-alcohol test was necessary constituted an exigent circumstance when 2 hours had elapsed between a fatal accident and the decision to enter the home, there was strong probable cause that the suspect was in the home

**2.** The issue in the case was whether an arrest

was necessary. *Oevering*, 268 N.W.2d at 72.

and refused to answer repeated knocks on the door, and there was the "additional fact" that alcohol levels diminish soon after drinking stops. This court expressly limited its decision to the facts of the case. *Id.* at 61.

In *State v. Speak,* 339 N.W.2d 741, 745 (Minn.1983), where the issue was probable cause, this court noted that "[e]xigent circumstances were clearly present," but did not discuss why. One hour and 10 minutes passed between the time the police were called to the scene of the accident and the time the breath test was administered. *Id.* at 742–43. In *State v. Paul,* 548 N.W.2d 260, 265–66 (Minn.1996), this court upheld the warrantless entry into a suspect's home to arrest him because there were two kinds of exigent circumstances: hot pursuit and imminent destruction of evidence. We found that "the need to preserve evidence of Paul's blood alcohol level is *a* compelling exigent circumstance," *id.* at 266 (emphasis added), but we did not conclude that exigent circumstances existed based *only* on the fact that "the percentage of alcohol in the blood begins to diminish shortly after drinking stops," *id.* at 267 (internal quotation marks omitted). In finding that evidence was at risk of destruction, we noted that the suspect's blood-alcohol level "might have dissipated while a warrant was being obtained, or [he] might have drunk more alcohol, making a chemical test unreliable." *Id.* We did not mention a single-factor exigent circumstance, but rather held that "an officer in hot pursuit of a person suspected of the serious offense of driving under the influence of alcohol may make a warrantless entry into the suspect's home in order to effectuate an arrest." *Id.* This court thus relied on the totality of the circumstances to support the conclusion that there was no time to get a warrant.

Other opinions of this court do not address what is necessary to find the single-factor exigent circumstance of imminent destruction of evidence. In *State v. Aguirre,* 295 N.W.2d 79, 80–81 (Minn. 1980), the issue was whether a blood sample taken because the officer had probable cause to believe a felony offense had been committed could be used as evidence when the State chose instead to prosecute the suspect for a misdemeanor offense. This court stated that the officer "knew that it was essential that he obtain the blood sample without delay and without regard to whether defendant would consent," but the court did not explain what facts led to this conclusion. *Id.* at 82. In *State v. Lee,* 585 N.W.2d 378, 380, 383 (Minn.1998), where the issue was what kind of probable cause was required, this court upheld the taking of a blood sample when the standard implied consent advisory was read to the suspect and he refused to submit to the test. There was no discussion of exigent circumstances. These cases are thus not helpful to deciding the issue here.

In *Tyler v. Commissioner of Public Safety,* 368 N.W.2d 275, 277 (Minn.1985), this court reviewed the civil revocation of a driver's license under the implied consent law. The issue was whether the police officer had probable cause to require the driver to submit to a test. *Id.* at 278. This court did not address exigent circumstances, but simply stated that federal constitutional law permits a warrantless blood draw if there is probable cause to believe the suspect has committed the offense of DWI and the draw is necessary to preserve evidence. *Id.* (citing *South Dakota v. Neville,* 459 U.S. 553, 558–64, 103 S.Ct. 916, 74 L.Ed.2d 748 (1983) (using analysis under Fifth Amendment to conclude that suspect's refusal to consent to test was not protected by the privilege against self-incrimination); *Cupp v. Murphy,* 412 U.S. 291, 295–96, 93 S.Ct. 2000, 36 L.Ed.2d 900 (1973) (allowing a limited search under suspect's fingernails as a search incident to

arrest, necessary to preserve evanescent evidence); *Aguirre,* 295 N.W.2d 79). *Tyler* thus offers no help in discerning whether the simple fact that alcohol dissipates in the bloodstream constitutes exigent circumstances.

In conclusion, a review of our cases leads me to the conclusion that our case law does not support a holding that the natural dissipation of alcohol alone creates exigent circumstances justifying a warrantless, nonconsensual blood draw. Rather, we have consistently applied a rule of law that requires a reasonable belief by the officer that there is not enough time to obtain a warrant. I would thus decline to adopt a per se rule.

The majority contends that the view urged by Shriner is "the minority view." I strongly and respectfully disagree with this characterization of the holdings of other courts. In two of the cases cited by the majority in footnote 11, the presence of exigent circumstances was not at issue. *See State v. Entrekin,* 98 Hawai'i 221, 47 P.3d 336, 348 (2002) (the defendant did not dispute that exigent circumstances were present); *State v. Woolery,* 116 Idaho 368, 775 P.2d 1210, 1212–13 (1989) (the defendant argued probable cause and lack of conformity with Idaho's implied consent statute). In cases where the exigent circumstances exception is not squarely at issue but addressed only briefly, I do not find the detailed reasoning necessary to conclude that a single-factor exigency exists. *See State v. Baker,* 502 A.2d 489, 492–94 (Me.1985) (discussion of probable cause and exigent circumstances not separated).

Other cases cited by the majority in support of a bright-line rule are not on point. *See United States v. Eagle,* 498 F.3d 885, 892 (8th Cir.2007); *United States v. Reid,* 929 F.2d 990, 993 (4th Cir.1991); *State v. Cocio,* 147 Ariz. 277, 709 P.2d 1336, 1344–45 (1985); *State v. Bohling,* 173 Wis.2d 529, 494 N.W.2d 399, 402 (1993). The *Cocio* court offered no reasoning for its interpretation of *Schmerber,* and *Cocio* differs factually from this case because the blood draw was initiated by a doctor for medical reasons, rather than by law enforcement. 709 P.2d at 1345. The *Eagle* court stated that "[e]xigent circumstances exist when there is a risk of destruction of evidence, including a risk that a defendant's blood-alcohol content will dissipate because 'the body functions to eliminate [alcohol] from the system.'" 498 F.3d at 892 (alteration in original) (quoting *Schmerber,* 384 U.S. at 770–71, 86 S.Ct. 1826). But the court did not base its determination that exigent circumstances existed on the simple fact that alcohol dissipates in the bloodstream; it considered whether a warrant could be obtained before the evidence was destroyed or removed. *Id.* Specifically, the court noted that nearly 2–1/2 hours had already passed between the accident and the blood draw and concluded that further delay would have allowed "further dissipation of alcohol" and created a risk that the suspect would be unavailable for a blood draw upon the officer's return. *Id.*

In *Reid,* where a breathalyzer test was at issue, the court took pains to explain that a telephonic search warrant does not eliminate the exigency because compliance with the rules for obtaining one takes time and "[t]ime is what is lacking in these circumstances." 929 F.2d at 993. The finding of exigent circumstances thus depends not only on the dissipation of alcohol, but also on the fact that obtaining a warrant creates a delay long enough to destroy the evidence. The *Reid* court explicitly laid out three factors in holding that exigent circumstances were present: societal recognition of the government's interest in protecting citizens from drunk drivers, necessity of prompt testing for alcohol in the bloodstream, and the fact

that "[b]reathalyzer tests cause a lesser intrusion than blood tests." *Id.* at 994. The *Reid* court's conclusion does not inform our decision here, because its holding concerned breathalyzer tests rather than blood tests.

Only one other court that has directly addressed the precise issue before us has concluded that a per se exigency exists. In *State v. Bohling,* 173 Wis.2d 529, 494 N.W.2d 399, 402 (1993), the Wisconsin Supreme Court concluded that *Schmerber* must be read as creating a single-factor exigency, without explaining how such an interpretation was possible in the face of *Schmerber's* admonition that its holding "in no way indicates that [the Constitution] permits more substantial intrusions, or intrusions under other conditions," 384 U.S. at 772, 86 S.Ct. 1826. For this reason, I do not find the *Bohling* court's reasoning persuasive.

One other state court directly addressing the precise issue in this case is persuasive on why this court should reject a per se exigency. *State v. Rodriguez,* 156 P.3d 771 (Utah 2007). In reading *Schmerber,* the Utah court pointed to three categories of "special facts" that combined to create an exigency, as well as to the Court's emphasis on the "stringently limited conditions" under which a warrantless intrusion could be made into an individual's body. *Id.* at 776. It refused to assume that unacceptable delay always accompanies efforts to obtain a warrant, pointing to the availability of technology to aid in more rapid procedures. *Id.* at 778. It expressed confidence in the ability of law enforcement officials and courts to request and issue warrants within a timeframe that ensures the preservation of evidence. *Id.* at 779.

The Iowa Supreme Court recently addressed the admission of test results from a warrantless blood draw, within the context of its implied consent statute, and rejected *Bohling's* reasoning in favor of *Rodriguez's.* *State v. Johnson,* 744 N.W.2d 340, 344 (Iowa 2008). Interestingly, in both *Rodriguez* and *Johnson,* the court considered the totality of the circumstances and concluded that the warrantless blood draw did not violate the Fourth Amendment. *Johnson,* 744 N.W.2d at 344–45; *Rodriguez,* 156 P.3d at 782.

Based on my reading of *Schmerber,* of this court's precedent, and of decisions from other courts, I would hold that an individual determination of whether exigent circumstances exist, based on the totality of the circumstances, must be made in each case. Like the *Rodriguez* court, I am confident that law enforcement and the courts in Minnesota are fully able to evaluate the circumstances and make these determinations without a per se exigency. I would not, as the majority suggests, require police officers to know with certainty how long it would take to obtain a warrant or when the suspect had his or her last drink. I would simply require that the officer be reasonable in his or her belief that the delay necessary to obtain a warrant would result in destruction of the blood-alcohol evidence.

In this case, the police officer who stopped and arrested Shriner did not have the responsibility of investigating the accident or seeking medical attention for any injured person. Nor did Shriner herself need medical attention. The officer was not worried that Shriner would quickly "slip under the legal limit." The accident occurred close to a hospital. The State presented no evidence of exigent circumstances other than the natural dissipation of alcohol in the bloodstream. Applying a "totality of the circumstances" test, I would affirm the district court's suppression of Shriner's blood test results.

ANDERSON, PAUL H., Justice (dissenting).

I join in the dissent of Justice Meyer.