STATE of Minnesota, Respondent,

v.

**Larry Brian OLSON, Appellant.**

No. C6–90–831.

Supreme Court of Minnesota.

Feb. 28, 1992.

Michael K. O'Tool, Maplewood, for appellant.

Hubert H. Humphrey, III, Atty. Gen., Robert A. Stanich, Asst. Atty. Gen., St.

Paul and Thomas Simmons, Renville County Atty., Olivia, for respondent.

## OPINION

COYNE, Justice.

The decisive issues in this marijuana possession case are whether the trial court erred in instructing the jury pursuant to Minn.Stat. § 152.028, subd. 1, which authorizes the fact finder in drug prosecutions to infer knowing possession if certain circumstances are present, and, if so, whether the error was prejudicial error requiring a new trial. Answering both questions affirmatively, we reverse defendant's conviction of possessing marijuana weighing 50 or more kilograms and remand for a new trial.

In June of 1989 the county weed inspector in Renville County received a complaint from an adjacent landowner about weeds on a small farm of which the owner was believed to be a man named Raymond Kraetsch, a resident of Racine, Minnesota. The inspector sent a summer employee, Loren Ewer, to investigate the complaint. Ewer knocked on the farmhouse door many times but received no response, even though a light was on and the radio was blaring away. Ewer apparently felt someone might be injured, hurt or even deceased so he removed a screen and entered the house. Inside he saw marijuana strewn about.

He told his superior, who told the sheriff, who told the county attorney. The county attorney told the sheriff to suspend any law enforcement activity on the matter because of the manner in which Ewer obtained his information, but also told the sheriff to make contact with whoever was living there and tell that person about the break-in.

Deputy Doug Pomplum was assigned the duty to make contact with whoever lived there, but this proved to be a difficult task. Pomplum drove by the place every day on the way to and from work but never saw anyone there. Through the middle of July these attempts to make contact were unsuccessful, although the sheriff's office did learn that a car seen there on two occasions was listed to a resident of Fifty Lakes, Minnesota, and that her boyfriend, defendant, had a criminal record. Finally, on July 17, the deputy saw defendant on a tractor discing and stopped and told him about the break-in. When the deputy asked defendant if he wanted to go in with the deputy and see if anything was missing, defendant said no.

After the meeting the sheriff's office did a follow-up computer check and learned that there was an outstanding Ramsey County bench warrant for defendant's arrest for failure to show up for a jail sentence on a driving after suspension conviction. Attempts to serve the warrant on defendant were unsuccessful (because he was never seen there) until 3 months later, on September 28.

After the deputy saw the car there on that day, the sheriff and the deputy went to the house and knocked on the door. Defendant came outside, wearing only jeans, and was placed under arrest. There was a factual dispute at the omnibus hearing about what happened at this point, but the omnibus court accepted the officers' version of events. Their testimony indicated that defendant was given the choice of going to the station as he was or of going back into the house and getting shoes, socks and a shirt and was expressly told that if he went into the house they would have to accompany him. Their testimony indicated that defendant said that that was okay, that he wanted to put on some more clothes.

Once inside the house, the sheriff and deputy saw basically the same things the weed inspector had seen—small amounts of marijuana scattered about, guns visible in an open closet, a vacuum sealer in the kitchen, and some drug paraphernalia of the kind usually associated with the use of cocaine powder.

On the basis of what they saw, the officers decided to place defendant in the nearest jail, then obtain a search warrant, with the deputy guarding the house in the mean-

time. Before leaving, however, the sheriff and the deputy re-entered the house and conducted a sweep to make sure no one was hiding who could use the guns on the deputy or destroy evidence. They entered each room of the house, finding on the ground floor large amounts of marijuana in a closet abutting the kitchen and some marijuana scattered about in various areas. On the second floor the officers discovered more marijuana scattered about and a room which was obviously used as a drying room for marijuana.

Later that day, accompanied by other officers, they executed a search warrant. In the large barn near the house, which they entered by breaking a padlock, they found a substantial marijuana growing operation with 901 marijuana plants of very high quality. The plants had to be manually watered and that had been done not too long before the warrant was executed. Attached to a tractor they found a front-end loader full of vermiculite and soil of a kind that was used in the growing operation. In a shed there was a bypass around the electric meter so that the current usage for the growing lights in the barn was not metered.

The marijuana in the barn loft weighed 32.5 pounds. The marijuana plants with an unmeasured amount of dirt clinging to their roots weighed 133.25 pounds. The marijuana found in the closet abutting the kitchen weighed 70.75 pounds. The marijuana found scattered about the living room weighed less than one ounce.

The trial court denied the motion to suppress and rejected defendant's challenge to the constitutionality of the legislatively-enacted "permissive inference" of knowing possession.

Defendant testified that he was hired just to disc and weed for the owner every couple weeks and that he had only slept in the house a few times. He admitted seeing marijuana in the house but testified that he did not exercise dominion or control over it.

The jury found defendant not guilty of the charged offense of controlled substance crime in the first degree (possession of marijuana weighing 100 or more kilograms) but guilty of the lesser-included offense of controlled substance crime in the second degree (possession of marijuana weighing 50 or more kilograms).[1] The trial court sentenced defendant, whose criminal history was 2, to the presumptive sentence of 68 months in prison.

As a preliminary matter, we have no hesitancy in affirming the trial court's denial of the motion to suppress. Defendant's argument that his arrest was an unlawful "pretext" arrest, an argument based on *State v. Hoven*, 269 N.W.2d 849 (Minn.1978), is answered by decisions of this court subsequent to *Hoven* in which we have held that if there is an objective legal basis for it, an arrest or search is lawful even if the officer making the arrest or conducting the search based his or her action on the wrong ground or had an improper motive. *See, e.g., State v. Everett*, 472 N.W.2d 864, 867–68 (Minn.1991), and *State v. DeWald*, 463 N.W.2d 741, 748 n. 2 (Minn.1990), relying on *Scott v. United States*, 436 U.S. 128, 98 S.Ct. 1717, 56 L.Ed.2d 168 (1978).

Defendant would not be entitled to relief even under *Hoven*. The consent in *Hoven* was deemed tainted because the marijuana seized incident to the so-called pretext arrest was "absolutely instrumental" in provoking the defendant's consent. The consent in this case for the officers to enter the house after the arrest outside clearly was an intervening circumstance and the information obtained while they were in the house was properly relied upon in obtaining the search warrant. *See Laing v. United States*, 891 F.2d 683, 686 (8th Cir.1989) (voluntary, untainted consent is cure for any illegal pretextual arrest). As Professor LaFave points out, if the consent and a second search are not on the same occasion as an illegal search but instead on a later date, very little is required to show that the consent is voluntary and untainted. 3 W. LaFave, *Search and Seizure* § 8.2(d), at 195 (2d ed. 1987). Here the trial court credited the testimony of the police and not

---

1. One kilogram is the equivalent of 2.2046 pounds avoirdupois.

that of defendant on the issue of consent to enter following the arrest. Unlike the defendant in *Hoven,* defendant in this case had no reason to believe that he may as well consent because the "cat was already out of the bag," nor did he have any reason to believe that he may as well consent because "the cat soon will be out of the bag anyway." He was given a choice and he made the wrong choice. *Florida v. Bostick,* —— U.S. ——, 111 S.Ct. 2382, 2388, 115 L.Ed.2d 389 (1991) (rejecting argument that no reasonable person would freely consent to police conduct that he or she knows will result in the discovery of drugs or contraband).

As we said at the outset, the decisive issues in this case are those relating to the trial court's decision, over the objection of the defense, to read to the jury Minn.Stat. § 152.028, subd. 1, which provides:

> The presence of a controlled substance in open view in a room, other than a public place, under circumstances evincing an intent by one or more of the persons present to unlawfully mix, compound, package, or otherwise prepare for sale the controlled substance permits the factfinder to infer knowing possession of the controlled substance by each person in close proximity to the controlled substance when the controlled substance was found.

As we have said in a number of cases, we have the primary responsibility under the separation of powers doctrine for the regulation of evidentiary matters and matters of trial and appellate procedure. *State v. Larson,* 453 N.W.2d 42, 46 (Minn. 1990), remanded to this court for consideration on other grounds, —— U.S. ——, 111 S.Ct. 29, 112 L.Ed.2d 7 (1990); *State v. Dana,* 422 N.W.2d 246, 249 (Minn.1988); *State v. Mitjans,* 408 N.W.2d 824, 830 (Minn.1987); *State v. Willis,* 332 N.W.2d 180, 184 (Minn.1983); *City of St. Paul v. Whidby,* 295 Minn. 129, 143–44, 203 N.W.2d 823, 831–32 (1972). Moreover, one of the primary or core functions of this court is to ensure that each criminal defendant receives a fair trial.

Decisions of the United States Supreme Court make a distinction between statutes that create so-called mandatory presumptions and those that merely inform the jury that an inference is permissible under certain circumstances. Under the approach that the United States Supreme Court and this court have taken, it is constitutionally allowable to instruct the jury on a *permissive* inference if, considering all the evidence in a particular case, there is a rational basis for telling the jury that it may infer one fact from the proof of another. *Ulster County Court v. Allen,* 442 U.S. 140, 163, 99 S.Ct. 2213, 2227, 60 L.Ed.2d 777 (1979); *State v. Williams,* 324 N.W.2d 154, 160 (Minn.1982) (discussing and applying *Ulster* case). We have no doubt that the inference created by the statute passes muster under *Ulster.* Nevertheless, we conclude that it was improper for the trial court to instruct the jury as it did. We agree with the Committee that prepared the *Manual of Model Criminal Jury Instructions for the Ninth Circuit* (1989 ed.) that as a general rule instructions on particular kinds of evidence "should be avoided as much as possible" and that this is particularly true with respect to inferences. *Id.* at 48. The Committee gave this explanation for its position:

> An inference, *i.e.,* a finding based on circumstantial evidence, may properly be drawn by the jury when it can be said with substantial assurance that the inferred fact is more likely than not to flow from the proved fact on which it is made to depend. If the rational connection between facts presented and facts inferred is derived from common sense and experience, the matter can normally be left to the jury's judgment upon general instructions. Specific instructions on particular inferences are therefore not necessary in order for counsel to be able to argue the point and the jury to consider it.
>
> Aside from being unnecessary, instructions on particular inferences are undesirable in that they tend to inject argument into the judge's charge and lengthen it unnecessarily. The Committee recommends that the subject of inferences

be covered by the court in a conference with counsel, normally in conjunction with settling instructions, at which guidelines for closing argument can be established.[2]

*Id.* (Citations omitted).

■ Undoubtedly, one could draft a balanced instruction dealing with possession—an instruction describing the various types of possession as well as listing a number of factors that the jury is free to consider in determining whether the state has met its burden of proving conscious and knowing possession.[3] We believe, however, as a general matter that the wiser course for trial courts may be to avoid as much as possible the giving of instructions on particular kinds of evidence, especially inferences.

■ In any event, the instruction given in this case clearly was improper because it was not a balanced instruction on the various relevant factors bearing on the jury's determination of the disputed possession issue but rather was one which singled out and unfairly emphasized one factor, one piece of the circumstantial evidence, bearing on that determination, thereby suggesting to the jury that in the court's opinion that factor was of greater importance than other relevant factors. Indeed, the instruction did not even expressly inform the jury that the inference did not necessarily follow—that is, that the jury was *not required* to infer that the defendant knowingly possessed any marijuana in open view.

■ The erroneous nature of the instruction does not necessarily require the award of a new trial. Rather, harmless error impact analysis is appropriate. *Cf. Yates v. Evatt,* —— U.S. ——, 111 S.Ct. 1884, 1886–87, 114 L.Ed.2d 432 (1991) and *Rose v. Clark,* 478 U.S. 570, 576–79, 106 S.Ct. 3101, 3105–07, 92 L.Ed.2d 460 (1986) (even determination that instruction given was erroneous burden-shifting instruction does not necessarily mean that new trial is required).

■ While there undoubtedly was more than enough circumstantial evidence here to support the guilty verdict, we are concerned about the possible impact of the instruction in this case, particularly in view of the prosecutor's emphasis in closing argument that the inference was a *statutory* inference. Defendant should be given a new trial if it cannot be said beyond a reasonable doubt that the error had no significant impact on the verdict. Although defendant *probably* would have been convicted in any event, we cannot conclude *beyond a reasonable doubt* that he would have been convicted in any event. Therefore, we reverse his conviction and remand for a new trial.

Reversed and remanded for a new trial.

---

**2.** The trial court, in setting guidelines in chambers, should inform the prosecutor that he or she is free to argue the common sense inference on which a statute of this sort is based but that the prosecutor may *not* read the statute or otherwise inform the jury of the existence of the statute (as by saying that "the law permits" the inference).

**3.** The relevant part of such an instruction in the context of drugs found in a residence might read as follows:

In determining whether or not the state has proved beyond a reasonable doubt that the defendant was in knowing possession of [name of drug] you may consider such factors as whether the defendant was the owner or lessee of the premises in which the [drug] was found; whether the defendant had exclusive control over the area within the premises where the [drug] was found; the defendant's proximity to the [drug] at the time of the arrest; the number of other people, if any, present at the time the [drug] was found; the defendant's relationship or association with any other people present at the time the [drug] was found; and the defendant's conduct at the time the [drug] was found.