STATE of Minnesota, Respondent,

v.

**Joseph V. HOLLINS, Appellant.**

No. A08–0607.

Court of Appeals of Minnesota.

May 12, 2009.

Lori Swanson, Attorney General, John B. Galus, Assistant Attorney General, St. Paul, MN; and Mark A. Ostrem, Olmsted County Attorney, Rochester, MN, for respondent.

Lawrence Hammerling, Chief Appellate Public Defender, Roy G. Spurbeck, Assistant Public Defender, St. Paul, MN, for appellant.

Considered and decided by STONEBURNER, Presiding Judge; SHUMAKER, Judge; and PORITSKY, Judge.

## OPINION

PORITSKY, Judge.*

Appellant challenges his conviction of aiding and abetting a third-degree controlled-substance crime, asserting that the district court erred by (1) giving the jury an improper-inference instruction, and (2) allowing a police officer to testify about appellant "rolling a blunt" at the time of the sale. We affirm.

---

* Retired judge of the district court, serving as judge of the Minnesota Court of Appeals by appointment pursuant to Minn. Const. art. VI, § 10.

## FACTS

On December 7, 2004, Scott Hoeft, a paid police informant working with Rochester police, entered a Rochester apartment and asked appellant Joseph Hollins for "a fifty," that is, $50 worth of crack cocaine. According to Hoeft, Hollins made a telephone call and Andrew Scott arrived at the apartment. Scott sold the crack cocaine to Hoeft. After the sale occurred, Hoeft left the apartment and turned the crack cocaine over to Officer Daryl Seidel. Ultimately Hollins was charged by complaint with aiding and abetting a third-degree controlled-substance crime and with conspiracy to commit the same crime.

At trial, Hoeft testified to the facts set out above. The police had equipped him with a transmitter that would enable the police to monitor voices and other sounds in Hoeft's immediate area. Officer Paul Wilson, monitoring the transmissions from Hoeft, testified that he heard "talk about that [Hoeft] wanted to buy a fifty piece, which is a $50 rock.... I heard [Hollins] that he was speaking with, I heard [Hollins] make a phone call." Officer Wilson further testified that he could hear only parts of the telephone conversation through the transmitter, but he understood that Hollins was "making arrangements for a fifty piece to be brought over to the apartment." Scott, the sole witness on behalf of Hollins, testified that it was Hoeft, not Hollins, who called him earlier that day, that he (Scott) arrived at Hollins's apartment shortly after Hoeft did, and that Hollins did not participate in the drug sale. There is no dispute, however, that Scott sold Hoeft "a fifty" at Hollins's apartment. After a two-day trial, the jury returned guilty verdicts on both charges. Hollins was sentenced to 56 months' imprisonment on the aiding and abetting charge, and the conspiracy charge was dismissed.

## ISSUES

I. Did the district court commit plain error by instructing the jury that "[a] person's presence, companionship, and conduct after an offense" are relevant circumstances from which a person's criminal intent may be inferred?

II. Did the district court commit plain error by permitting testimony regarding appellant's marijuana use?

## ANALYSIS

### I.

Hollins did not object to the jury instruction given at trial but now asserts that the district court erred by instructing the jury that to be guilty of aiding and abetting, "[a] person's presence, companionship, and conduct after an offense are relevant circumstances from which a person's criminal intent may be inferred." Hollins asserts that the instruction amounts to an improper-inference instruction, which violates his due process rights.

In general, the failure to object to jury instructions or to propose specific instructions constitutes a waiver of the issue on appeal. *State v. White,* 684 N.W.2d 500, 508 (Minn.2004). However, we may consider such issues under the plain-error doctrine. "The plain error standard requires the defendant to show (1) error, (2) that was plain, and (3) that affected the defendant's substantial rights." *State v. Manthey,* 711 N.W.2d 498, 504 (Minn.2006). If the defendant establishes all three of these factors, we also must decide whether the error seriously affected the fairness and integrity of the judicial proceedings. *State v. Vick,* 632 N.W.2d 676, 685 (Minn.2001) (citing *Johnson v. United States,* 520 U.S. 461, 469–70, 117 S.Ct. 1544, 1550, 137 L.Ed.2d 718 (1997) (explaining that district court may exercise

its discretion to correct error only if error seriously affected fairness, integrity, or public reputation of judicial proceedings)). We review jury instructions "in their entirety to determine whether they fairly and adequately explain the law of the case." *State v. Peterson*, 673 N.W.2d 482, 486 (Minn.2004).

The critical first step in the plain-error analysis is to determine whether the jury instruction misstated the law. Under Minnesota law, "[a] person is criminally liable for a crime committed by another if the person intentionally aids, advises, hires, counsels, or conspires with or otherwise procures the other to commit the crime." Minn.Stat. § 609.05, subd. 1 (2004). Mere presence at the crime scene alone is not sufficient to prove that a person aided or advised, because inaction, knowledge, or passive acquiescence does not rise to the level of criminal culpability. *State v. Ostrem*, 535 N.W.2d 916, 924 (Minn.1995). However, "active participation in the overt act which constitutes the substantive offense is not required, and a person's presence, companionship, and conduct before and after an offense are relevant circumstances from which a person's criminal intent may be inferred." *Id.* Thus, in an aiding and abetting case, the state is required "to prove, beyond a reasonable doubt, that [the defendant knows] that his alleged accomplices [are] going to commit a crime and that [the defendant intends] his presence or actions to further the commission of that crime." *State v. Mahkuk*, 736 N.W.2d 675, 682 (Minn.2007).

The pattern jury instruction for aiding and abetting reads as follows: "The defendant is guilty of a crime committed by another person when the defendant has intentionally aided the other person in committing it, or has intentionally advised, hired, counseled, conspired with, or other-wise procured the other person to commit it." 10 *Minnesota Practice*, CRIMJIG 4.01 (2006). Prior to trial, Hollins requested an aiding and abetting instruction that more clearly stated that "mere presence is not enough." Specifically, Hollins requested the following be added:

> If you find that the State has shown that the defendant played some knowing role in the commission of Controlled Substance in the Third Degree and took no steps to thwart it, the defendant is guilty of aiding and abetting Controlled Substance in the Third Degree. ["Knowing role" can include aiding, advising, hiring, counseling, conspiring with, or procuring another to commit a crime; however, something more than mere presence, knowledge, inaction, or passive acquiescence is required.]

> If you find that the state has not shown that the defendant played some knowing role in the commission of Controlled Substance in the Third Degree and took no steps to thwart it, the defendant is not guilty of aiding and abetting Controlled Substance in the Third Degree.

The state argued that the proffered instruction was "misleading" unless "a substantial additional explanation" was given to the jury. The state requested the addition of language similar to that found in *State v. Gates*, which states: "[A]ctive participation in the overt act that constitutes the substantive offense is not required, and a defendant's presence, companionship, and conduct before and after an offense is committed are relevant circumstances from which the jury may infer criminal intent." 615 N.W.2d 331, 337 (Minn.2000) (citation omitted), *overruled on other grounds by Crawford v. Washington*, 541 U.S. 36, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004).

After a lengthy debate, the district court proposed modifying the instruction by adding, "[p]resence, companionship and conduct before and after the offense are circumstances from which a person's participation and criminal intent may be inferred." Defense counsel responded, "I guess—I guess that's part of the cases, so I would not object to that, your Honor." Ultimately the jury instruction read:

As to liability for crimes of another then, the defendant is guilty of a crime committed by another person when the defendant has intentionally aided the other person in committing it, or has intentionally advised, hired, counseled, conspired with, or otherwise procured the other person to commit it. If the defendant aided, advised, hired, counseled, or conspired with another, or otherwise procured the commission of a crime by another person, and the crime was committed, the defendant is guilty of the crime. You are not to concern yourselves with what action if any was taken against the other person.

If you find that the State has shown that the defendant played some knowing role in commission of the controlled substance crime in the third degree and took no steps to thwart it, the defendant is guilty of aiding and abetting controlled substance crime in the third degree. "Knowing role" here is defined or can include aiding, advising, hiring, counseling, conspiring with, or procuring another to commit a crime. However, something more than mere presence, knowledge, inaction, or passive acquiescence is required. A person's presence, companionship, and conduct after an offense are relevant circumstances from which a person's criminal intent *may* be inferred.

If you find that the State has not shown that the defendant played some knowing role in the commission of controlled substance crime in the third degree and took no steps to thwart it, the defendant is not guilty of aiding and abetting controlled substance crime in the third degree.

(Emphasis added.)

 Initially, we note that the district court has significant discretion in crafting jury instructions. *State v. Broulik*, 606 N.W.2d 64, 68 (Minn.2000). Here, because the instruction told the jury that it *may* infer criminal intent, it gives rise to a *permissive* inference; that is, it does not tell the jury that it *must* draw the inference. Hollins argues that permissive inferences are "discouraged." However, they are not erroneous per se. *Ulster County Court v. Allen*, 442 U.S. 140, 162–63, 99 S.Ct. 2213, 2227, 60 L.Ed.2d 777 (1979); *Sandstrom v. Montana*, 442 U.S. 510, 514, 99 S.Ct. 2450, 2454, 61 L.Ed.2d 39 (1979); *State v. Olson*, 482 N.W.2d 212, 216 (Minn.1992) (dicta). An instruction containing a permissive inference will pass constitutional muster if it instructs the jury that (1) the jury may—as opposed to must—draw the inference; (2) the defendant is presumed innocent and it is the prosecution's burden to prove the defendant guilty beyond a reasonable doubt; and (3) the jury must examine all the evidence in the case. *Ulster County Court*, 442 U.S. at 160–62, 99 S.Ct. at 2226–27. Here, the district court's instruction met all three requirements.

In addition, a permissive-inference instruction must be balanced. *Olson*, 482 N.W.2d at 216. An instruction that singles out and emphasizes one piece of circumstantial evidence bearing on a disputed issue can suggest to a jury that, in the district court's opinion, that factor was of greater importance than other relevant factors. *See id.*

The jury instruction given in the instant case is nearly identical to language found in a number of Minnesota Supreme Court cases. Moreover, there is nothing in the record to suggest that the jury instruction was unbalanced or prejudicial.

Hollins cites two cases to support his claim that the jury instruction contained an improper permissive inference, but those cases are inapplicable here. In *State v. Litzau,* 650 N.W.2d 177, 185–87 (Minn.2002), the defendant's conviction was reversed when the permissive-inference instruction on possession of a controlled substance contributed to the cumulative prejudicial effect of the errors in the defendant's trial. Here, Hollins did not point to, and a review of the record does not reveal, any such "cumulative errors." Similarly, in *Olson,* the jury instruction improperly "singled out and unfairly emphasized one factor," and did not inform the jury that it need not infer criminal behavior from certain conduct. 482 N.W.2d at 216. Here, the instruction articulates at least three factors that the jury *may* consider. We conclude that the permissive-inference jury instruction was not erroneous. Because the jury instruction was not erroneous, we need not continue the plain-error analysis.

## II.

Hollins next challenges the admission of Officer Seidel's testimony that Hoeft told Seidel that Hollins was "rolling a blunt" when Hoeft entered the apartment to purchase the crack cocaine. At trial, Hollins did not object to this testimony. Generally, failure to object to the admission of evidence constitutes a waiver of the issue on appeal. *Vick,* 632 N.W.2d at 684. As we have noted above, under the plain-error doctrine, we may consider the evidentiary issues if there is (1) error, (2) that is plain, and (3) that affects the defendant's substantial rights. *Manthey,* 711 N.W.2d at 504. The party asserting plain error has the burden of establishing all three elements. *Id.*

At issue is the applicability of Minnesota Rule of Evidence 404(b)—the admissibility of other crimes, wrongs, or acts. In general, "[e]vidence of another crime, wrong, or act is not admissible to prove the character of a person in order to show action in conformity therewith." Minn. R. Evid. 404(b). However, evidence of other crimes or acts may be admitted to demonstrate "motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." *Id.*

In a criminal prosecution, a rule 404(b) analysis is unnecessary if the evidence of another crime is intrinsic to the crime charged. *See* Fed.R.Evid. 404 1991 comm. cmt. Minnesota caselaw has used the term *extrinsic* to refer to acts that are subject to the analysis set forth in *State v. Spreigl,* 272 Minn. 488, 139 N.W.2d 167 (1965). *See State v. Smith,* 749 N.W.2d 88, 92 (Minn.App.2008) (stating that *Spreigl* "precludes evidence of another act extrinsic to the case if the purpose is to show a person's character and then to invite the inference that the person's conduct conformed to that character"). But no Minnesota case has referred to a dichotomy between intrinsic and extrinsic crimes or provided for a standard to differentiate between the two. The distinction between them has been recognized and explored by many different courts from which we now seek guidance. *See, e.g., United States v. Badru,* 97 F.3d 1471, 1474 (D.C.Cir.1996) ("Evidence of criminal activity other than the charged offense is not considered extrinsic if it is an uncharged offense which arose out of the same transaction or series of transactions as the charged offense, if it was inextricably intertwined with the evidence regard-

ing the charged offense, or if it is necessary to complete the story of the crime of trial...." (Quoting *United States v. Weeks,* 716 F.2d 830, 832 (11th Cir.1983))); *United States v. Turpin,* 707 F.2d 332, 336 (8th Cir.1983) (admitting evidence of homicide in addition to crime charged because evidence was an "integral part of the immediate context of the crimes charged, and relevant to prove motive and identity because it tended to show why appellant parked the car across the railroad tracks" (citation omitted)); *United States v. Sepulveda,* 710 F.2d 188, 189 (5th Cir.1983) (stating that evidence that is "inextricably intertwined with the evidence used to prove the crime charged" is intrinsic evidence not subject to rule 404(b)); *United States v. Derring,* 592 F.2d 1003, 1007 (8th Cir.1979) ("Evidence of other crimes may be presented when they are so blended or connected with the one on trial as that proof of one incidentally involves the other; or explains the circumstances thereof; or tends logically to prove any element of the crime charged." (Quotation omitted.)); *Ignacio v. Territory of Guam,* 413 F.2d 513, 520 (9th Cir.1969) ("If several crimes are intermixed, or blended with one another, or connected so that they form an indivisible criminal transaction, and full proof by testimony, whether direct or circumstantial, of any one of them cannot be given without showing the others, evidence of any or all of them is admissible against a defendant on trial for an offense which is itself a detail of the whole criminal scheme.").

■ In light of the background provided by these other courts, we now adopt the following definition of intrinsic evidence: In a criminal prosecution, evidence of another crime is intrinsic to the charged crime and therefore admissible without regard to Minn. R. Evid. 404 if: (1) the other crime arose out of the same transaction or series of transactions as the charged crime, and (2) either (a) the other crime is relevant to an element of the charged crime, or (b) excluding evidence of the other crime would present an incoherent or incomplete story of the charged crime.

Here, Officer Seidel testified that Hoeft related that as Hoeft entered the apartment, Hollins was "rolling a blunt." The prosecutor then asked Officer Seidel to define "blunt," and Seidel testified that "[a] blunt is marijuana—you take the inside of a cigar or take the tobacco out and replace it with marijuana." This testimony clearly refers to a crime other than the charged crimes and is not being used to show motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident, concerning the charged crimes. The state contends that the evidence is nonetheless admissible because it is necessary for the state to make out its whole case, but this evidence does not fit into our definition of admissible intrinsic evidence. Even though these two crimes occurred at the same time and during the same transaction, the evidence of Hollins's marijuana possession does not satisfy either prong of the second part of the above definition of intrinsic evidence: Hollins was charged with conspiring with Scott, and with aiding and abetting Scott, to sell crack cocaine, and evidence of Hollins's possession of marijuana has no relevance to any conspiracy between Hollins and Scott to sell crack cocaine, nor does it show that Hollins aided and abetted Scott to sell crack cocaine. The state could present a coherent and complete story of Hollins's involvement in both charges involving the sale of crack cocaine without mention of Hollins "rolling a blunt." Because the testimony regarding Hollins's marijuana use is extrinsic evidence of a crime specifically barred by Minn. R. Evid. 404, it was error for Seidel's testimony to be admitted.

Even though we conclude that Seidel's testimony regarding the blunt was erroneously admitted, Hollins still has the burden of proving that the error was plain and that it affected his substantial rights. An error is plain if it is clear or obvious under current law. *Johnson,* 520 U.S. at 467, 117 S.Ct. at 1549. An error is clear or obvious if it "contravenes case law, a rule, or a standard of conduct." *State v. Ramey,* 721 N.W.2d 294, 302 (Minn.2006). An alleged error does not contravene case-law unless the issue is "conclusively resolved." *State v. Jones,* 753 N.W.2d 677, 689 (Minn.2008).

No prior Minnesota case has articulated the framework adopted here. Therefore, the error in admitting Officer Seidel's testimony could not have contravened existing caselaw.

In addition, Hollins has failed to establish that the error affected his substantial rights. Hollins asserts that because the evidence used to convict him was "not overly strong," it is likely that evidence of his marijuana use improperly influenced the jury and that therefore the error was prejudicial. We disagree.

To affect substantial rights, the error must be prejudicial; that is, there must be a "reasonable likelihood" that the error would have had a significant effect on the verdict. *Griller,* 583 N.W.2d at 741. We conclude that Hollins has not made a showing that the admission of Seidel's testimony had a significant effect on the jury's verdict. There were only three references to the marijuana use during the prosecution's case-in-chief: The first was made when Seidel testified, without prompting from the prosecutor, that Hollins was rolling a blunt when Hoeft showed up to purchase the crack cocaine. The second occurred when the prosecutor asked Seidel what was meant by "rolling a blunt." And the third was a passing comment made on the surveillance tape played for the jury. The prosecutor made no mention of marijuana use in his opening statement or closing argument, and because the marijuana use was mentioned only during one small portion of its case-in-chief, we cannot conclude that the state emphasized Hollins's marijuana use.

The jury heard Hoeft's testimony that he requested a "fifty," that Hollins made a telephone call, that Scott appeared, and that there was a sale of cocaine. The jury also heard Officer Wilson testify that he heard Hoeft tell Hollins that "he wanted a fifty," which, the officer explained, meant that Hollins wanted "$50 worth of crack cocaine." And although Wilson could hear only parts of the telephone conversation through the transmitter that Hoeft was wearing, from what he did hear Wilson understood that Hollins was "making arrangements for a fifty piece to be brought over to the apartment." Finally, the jury heard the police surveillance tape, which supported Hoeft's version of events. On these facts, the jury had ample evidence to support a conviction without improperly relying on Hollins's alleged marijuana use.

## DECISION

Because the jury instruction articulated at least three factors that the jury *could* consider, was not unbalanced or prejudicial, and did not "improperly single[ ] out and unfairly emphasize[ ] one factor," the district court did not err by giving the permissive-inference jury instruction. And because the erroneous admission of the testimony regarding appellant's marijuana use was not plain and did not affect his substantial rights, a new trial is not necessary.

**Affirmed.**