*This opinion will be unpublished and may not be cited except as provided by Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A14-1008**

State of Minnesota,
Respondent,

vs.

Lawrence Craig Ogris,
Appellant.

**Filed May 4, 2015
Affirmed
Rodenberg, Judge**

Ramsey County District Court
File No. 62-CR-13-3280

Lori Swanson, Attorney General, St. Paul, Minnesota; and

John Choi, Ramsey County Attorney, Kaarin Long, Assistant County Attorney, St. Paul, Minnesota (for respondent)

Cathryn Middlebrook, Chief Appellate Public Defender, Davi E. Axelson, Assistant Public Defender, St. Paul, Minnesota (for appellant)

Considered and decided by Chutich, Presiding Judge; Rodenberg, Judge; and Smith, Judge.

**UNPUBLISHED OPINION**

**RODENBERG**, Judge

Appellant Lawrence Ogris challenges his conviction of second-degree criminal sexual conduct, arguing that the district court erred in admitting other-acts evidence. Appellant also claims that his trial counsel was ineffective. We affirm.

**FACTS**

Appellant was charged with second-degree criminal sexual conduct, in violation of Minn. Stat. § 609.343, subd. 1(c) (2012), after an incident in May 2013, when he met an 18-year-old high school senior, N.H., in a St. Paul skyway after school. Appellant complimented N.H. on his gauges (large earrings), introduced himself as "Lorenzo," and offered to smoke marijuana with N.H. Appellant offered the marijuana to N.H. for free, N.H. agreed to smoke it with appellant, and appellant told N.H. that he knew of a place where they could smoke "and not get caught."

Appellant and N.H. walked through the skyway and across the street to an apartment complex. The entrance to the apartment complex was secure and appellant had no key. Appellant and N.H. waited for a person to exit, stopped the door from closing fully, and then entered the complex. Appellant and N.H. approached a stairwell and appellant offered N.H. $100.[1] Appellant and N.H. went to the bottom of a stairwell, where appellant showed N.H. various pill bottles and offered N.H. a beer. N.H. accepted

---

[1] N.H.'s trial testimony on this point was conflicting, but on cross-examination N.H. confirmed telling one of the officers that appellant offered him $100.

the beer and took a few sips of it. Appellant then pushed N.H. against the wall, using his forearm to press against N.H.'s throat.

Appellant began to grope the front of N.H.'s pants. Appellant told N.H., "I'm gonna suck your dick, you're gonna suck my dick." Appellant also held an unknown cylindrical object to N.H.'s stomach. N.H. believed the object was a gun because appellant threatened to shoot him. Appellant also told N.H. that he had a knife. At some point during the encounter, appellant reached beneath N.H.'s clothes and grabbed N.H.'s bare penis and his bare buttocks. Appellant also pushed N.H. to the ground.

After a struggle, N.H. managed to escape. He approached a stranger at a bus stop and asked to use that person's cell phone. He called the police. Officer Michael Matsen arrived 20 minutes later. N.H. told Officer Matsen what had happened. Officer Matsen told him "that a similar situation happened at a bar with possibly the same . . . guy, like exposing himself to someone at some bar in the area, like a bit ago." While Officer Matsen and N.H. were talking, Officer Matsen received a call about a man detained for theft by the security staff of the apartment complex where N.H. was assaulted. The description of the detained man matched N.H.'s description of his attacker. N.H. remained in Officer Matsen's squad car while the officer investigated the matter in the apartment complex.

The state presented evidence at trial concerning appellant's detention at the apartment complex where N.H. was assaulted. Appellant had allegedly stolen a backpack. Within minutes of the report of the stolen backpack, the apartment complex's head of security spotted appellant entering the third floor with a backpack that looked like

the one reported stolen.  He detained appellant.  When Officer Matsen arrived, he thought N.H.'s description of his attacker matched appellant "exactly."  Officer Matsen took appellant into custody for theft and mentioned nothing about the reported sexual assault.  While appellant was being escorted to a squad car, he spontaneously told Officer Matsen that "some weird white kid claimed [appellant] raped him and [appellant] told the kid to get away."

Appellant was placed in the back of a squad car, and Officer Matsen escorted N.H. to a location where he could see the squad car.  A different officer removed appellant from the back of the squad car and N.H. exclaimed, "Yes, that's him, that's him, that's the guy."  N.H. became emotional.

Before trial, the state notified appellant that it intended to offer evidence relating to another criminal sexual assault under Minn. R. Crim. P. 7.02.  The assault occurred in December 2013, about six months after the charged offense.  Before the jury was called in for voir dire on the first morning of trial, the district court heard arguments about the admissibility of evidence relating to this other incident.  The state proposed to present testimony from a 20-year-old man, J.D., who, while attending his younger brother's birthday party at a hotel in Bloomington, was similarly assaulted by appellant.  The state expected J.D. to testify that appellant was "hanging around" the hotel's pool and eventually walked over to J.D. and his family, inquiring whether they had seen a bag that he had lost.  The state expected J.D. to testify that he went to a different area of the hotel and appellant followed him.  The state expected J.D. to testify that, in order to get away from appellant, J.D. entered the men's bathroom.  The state expected J.D. to testify that

4

appellant followed him into the bathroom and that before J.D. knew he was there, appellant grabbed him and "grabbed his penis, over his shorts." The state expected J.D. to testify that appellant offered J.D. $100 not to say anything. The state told the district court that this assault was reported, appellant was arrested, and he claimed that a "young man had approached him wanting to use drugs."

The state argued that this *Spreigl*, or other-acts, evidence would be introduced to demonstrate appellant's "intent to commit a sexual assault and further goes to show a common scheme or plan on the part of [appellant]." Appellant's counsel argued that the evidence would be highly prejudicial and would be "premature punishment for something he's not been convicted of." The district court reserved its ruling until after the state presented its case-in-chief.

After the state had presented its case-in-chief, the district court revisited the *Spreigl* issue. The state renewed its request to offer J.D.'s testimony and that of the investigating officer in the December incident. The district court ruled as follows:

> There is a requirement that the State must provide evidence and convince this Court that there's clear and convincing evidence of its occurrence. Based on both the offer of proof and my review of the police reports, I do believe there is clear and convincing evidence . . . . The age of both victims is similar . . . . The type of touching is similar. The statements of the defendant in both incidences are similar. The mention of a hundred dollars appears in both cases. The place is analogous . . . they're both places where there are people who have rented places and then there's common areas . . . there's a marked similarity between these two incidences . . . I think it fits squarely under the *Spreigl* analysis and I'm going to allow that case to be introduced.

5

At trial, appellant did not object to either the testimony regarding the stolen backpack, or to N.H.'s testimony that Officer Matsen had conveyed to him that appellant may be the same person as a suspect in an indecent exposure case that occurred earlier that day. The jury found appellant guilty, and this appeal followed. Appellant challenges the admission of all of the other-acts evidence and claims that his trial counsel was ineffective.

## DECISION

### I.    Other Acts (*Spreigl*) Evidence

#### A. *Objected-to subsequent-assault evidence*

Appellant argues that the admission of evidence that he sexually assaulted another man after the charged incident was in error, arguing that the evidence was not material or relevant and that its admission was more prejudicial than probative. When there is an objection to the admission of other-acts evidence, we review the district court's decision for an abuse of discretion. *State v. Ness*, 707 N.W.2d 676, 685 (Minn. 2006).

The Minnesota Rules of Evidence prevent the admission of another "crime, wrong, or act . . . to prove the character of a person in order to show action in conformity therewith." Minn. R. Evid. 404(b). This general exclusionary rule of other-acts evidence, often referred to as *Spreigl* evidence after *State v. Spreigl*, 272 Minn. 488, 139 N.W.2d 167 (1965), protects a defendant's constitutional right to a fair trial. *Ness*, 707 N.W.2d at 685. The appellate decisions and rule 404(b) recognize exceptions to the general exclusionary rule for other-acts evidence, including when the evidence is offered to show motive, absence of mistake, identity, or a common scheme or plan. Minn. R.

Evid. 404(b); *Spreigl*, 272 Minn. at 491, 139 N.W.2d at 169; *see also Ness*, 707 N.W.2d at 688 (explaining the requirements when other-acts evidence is offered to prove a common scheme or plan). To admit other-acts evidence under one of the enumerated exceptions, (1) the state must give notice of its intent to admit the evidence; (2) it must clearly indicate what the evidence will be offered to prove; (3) there must be clear and convincing evidence that the defendant participated in the prior act; (4) the evidence must be relevant and material to the state's case; and (5) the probative value of the evidence must not be outweighed by its potential prejudice to the defendant. Minn. R. Evid. 404(b); *see also Ness*, 707 N.W.2d at 686 (extrapolating on each requirement). When the admission of the other-acts evidence is a "close call," the district court should exclude it. *Ness*, 707 N.W.2d at 685.

Here, it is undisputed that the state gave notice of its intent to introduce the other-acts evidence, and it identified the intended purpose of that evidence. The district court correctly identified that there must be clear and convincing evidence that appellant participated in the subsequent sexual assault, and we see no error in the district court's determination that the testimony of the victim and the investigating police officer met this standard. *See id.* at 686 (stating that, to be clear and convincing, the evidence must have a high probability of truthfulness). We likewise see no error in the district court's determination that the evidence is relevant to show a common scheme or plan after its independent analysis of the similarity of the facts in both cases. *See id.* at 688.

The Minnesota Supreme Court has held that other-acts evidence is admissible under the common scheme or plan exception when the other acts have a "marked

7

similarity in modus operandi to the charged offense." While the two incidents in this case may not be identical, the record supports the district court's finding that the incidents are markedly similar. The two victims were of similar age, same gender, there was similar touching, the assaults both took place in isolated areas of public places, and in both cases appellant claimed that the victim approached him either accusing him of rape, as in N.H.'s case, or asking him for marijuana, as in J.D.'s case. The district court did not err in concluding that the evidence of the alleged assault on J.D. was admissible under the common scheme or plan exception to the prohibition on other-acts evidence, as the facts of both incidents are markedly similar.

Common scheme or plan evidence can "bolster [a witness's] credibility by showing that [the witness] was not fabricating" his testimony. *Id.* Here, one of the issues was appellant's contention that N.H.'s testimony was not credible because he told three different accounts of what happened. In *Ness*, the supreme court noted that the potential prejudice of other-acts evidence may outweigh the probative value when the state's evidence on the disputed fact for which the other-acts is offered is strong. *Id.* at 690-91.

While the district court did not expressly find that the probative value of this evidence outweighed its prejudicial effect, it did reference the "need to weigh [prejudicial value] against its probativeness for the two specific reasons the state is offering it, intent or common scheme or plan." In admitting the other-acts evidence, the district court implicitly concluded that the probative value of the other-acts evidence outweighed the prejudicial effect. The district court was best situated to weigh the prejudice against the probative value. *See State v. Spaeth*, 552 N.W.2d 187, 193 (Minn. 1996) ("Admission of

8

*Spreigl* evidence lies within the sound discretion of the trial court"). We see no error in the district court's implicit conclusion that the probative value of the evidence outweighed its potential prejudicial effect.

The district court correctly applied the law to the proffered other-acts evidence and did not abuse its discretion in admitting it.

### B. Unobjected-to theft and indecent exposure evidence

Appellant next argues that the district court plainly erred in admitting testimony that he stole a backpack at the apartment complex where the assault took place and testimony that he may have been involved in an indecent exposure incident earlier that day. Appellant did not object to either of these references at trial.

Failure to object to other-acts evidence generally constitutes a waiver of the right to appeal unless the defendant can show plain error. *State v. Washington*, 693 N.W.2d 195, 204 (Minn. 2005); *see also State v. Vick*, 632 N.W.2d 676, 685 (Minn. 2001) (holding that when there is no objection, the issue on appeal is whether the district court's failure to sua sponte strike testimony may be considered plain error). Plain error requires the complaining party to show that the district court committed error, that the error committed was plain, and that the error affected appellant's substantial rights. *Washington*, 693 N.W.2d at 204. An error is plain when it is clear or obvious, meaning that the error contravenes caselaw, a rule, or a standard of conduct. *State v. Sontoya*, 788 N.W.2d 868, 872 (Minn. 2010). An error affects substantial rights when the error prejudiced the outcome of the case. *Id.*

### 1. *Theft of the backpack*

In *State v. Hollins*, we differentiated between extrinsic and intrinsic evidence when determining whether the *Spreigl* analysis applies to the admitted evidence. 765 N.W.2d 125, 132 (Minn. App. 2009). We held that

> evidence of another crime is intrinsic to the charged crime and therefore admissible without regard to Minn. R. Evid. 404 if: (1) the other crime arose out of the same transaction or series of transactions as the charged crime, and (2) either (a) the other crime is relevant to an element of the charged crime, or (b) excluding evidence of the other crime would present an incoherent or incomplete story of the charged crime.

*Id.* We also held that evidence that the defendant was "rolling a blunt" when the confidential informant entered his apartment was not intrinsic to the charged crime because, even though they occurred at the same time and during the same transaction, the fact that the defendant possessed marijuana was not relevant to an element of the charged crime—conspiring to and aiding and abetting the sale of cocaine—nor was the defendant's marijuana possession critical to the state's presentation of a coherent and complete story of the defendant's involvement in the crimes charged. *Id.*

Here, the evidence that appellant stole a backpack occurred close in time to the incident giving rise to the charged crime. Appellant was apprehended for stealing a backpack and, while in custody, he was identified by N.H. as the sexual-assault perpetrator. Even though the backpack theft was not an element of the charged offense, we consider the theft as a part of the same series of transactions as the assault. Unlike in *Hollins*, evidence of the backpack theft meets the second prong of the intrinsic-evidence

10

test.  Without explaining how appellant came to be detained, the state would not have been able to present a complete story of the charged offense.  Additionally, and significantly, in the absence of evidence that appellant was initially arrested for theft, and that he had not been informed of the assault claim, the probative significance of appellant's unsolicited statement to Officer Matsen that "some weird white kid" claimed that appellant raped him would have been obliterated.  That statement, in context, was highly relevant.  And the context was that appellant had been detained for an offense completely unrelated to his denial of the sexual-assault claim.  Because the evidence of the backpack theft fits within the intrinsic evidence test set forth in *Hollins*, we conclude that the admission of evidence of the theft was not plain error.

Appellant also argues that the district court plainly erred in not acting sua sponte to strike the testimony regarding the backpack theft.  Since the admission of the evidence was not plainly erroneous, the district court was presented with no error to correct.

### 2. *Indecent exposure*

Appellant also argues that the district court plainly erred in allowing testimony referring to an indecent-exposure incident earlier in the day.  Again, there was no objection at trial and we therefore review for plain error.  *Washington*, 693 N.W.2d at 204.

The testimony of N.H. that Officer Matsen told him that "a similar situation happened at a bar with possibly the same . . . guy, like exposing himself to someone at some bar in the area, like a little bit ago" may well have been objectionable.  It was not probative concerning the charged offense.  Unlike the other-acts testimony of J.D.,

11

discussed above, this reference was not indicative of a common scheme or plan. For purposes of discussion, we consider its admission to have been plainly erroneous.

But appellant must show, in addition to plain error, that his substantial rights were affected by the plain error. *Vick*, 632 N.W.2d at 685. We see no such effect here. There was a single reference to the statement during a two-day trial, without prompting by the prosecutor and without follow-up. Neither party made any further comment on the fleeting reference. It is extremely unlikely that this fleeting remark had any effect on the jury's verdict in this context. Appellant has failed to demonstrate that the testimony affected his substantial rights.

## II. Arguments in appellant's pro se brief

In his pro se supplemental brief, appellant argues that his trial counsel was ineffective. Appellant's factual claims are unsupported by the record.[2] We find no merit to appellant's ineffective assistance of counsel claims.

**Affirmed.**

---

[2] For example, appellant claims that "[o]nly once during trial did [trial counsel] object, raise argument, or cross examine." However, the record clearly refutes this factual assertion. Trial counsel objected multiple times, including twice during closing arguments. [Trial counsel] also argued, at length and several times, that the other-act evidence should not be admitted. And trial counsel cross-examined every witness except N.H, an apparent trial strategy.