*This opinion will be unpublished and may not be cited except as provided by Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A14-1581**

State of Minnesota,
Respondent,

vs.

Darren Ray Liimatainen,
Appellant.

**Filed July 6, 2015
Affirmed
Larkin, Judge**

Carlton County District Court
File No. 09-CR-14-159

Lori Swanson, Attorney General, James B. Early, Assistant Attorney General, St. Paul, Minnesota; and

Thomas H. Pertler, Carlton County Attorney, Carlton, Minnesota (for respondent)

Cathryn Middlebrook, Chief Appellate Public Defender, Rochelle R. Winn, Assistant Public Defender, St. Paul, Minnesota (for appellant)

Considered and decided by Larkin, Presiding Judge; Schellhas, Judge; and Reyes, Judge.

UNPUBLISHED OPINION

**LARKIN**, Judge

Appellant challenges his conviction of aiding and abetting receiving stolen property, arguing that the circumstantial evidence was insufficient to prove that he intentionally aided another to possess a stolen ATV. We affirm.

## FACTS

In January 2014, Carlton County Sheriff's Deputy David Radzak stopped a pickup truck that was pulling a trailer loaded with an Arctic Cat ATV. Deputy Radzak identified Raymond Dobosenski as the driver. Appellant Darren Ray Liimatainen, Dobosenski's uncle, was the sole passenger. Deputy Radzak noticed that the ATV had no key, appeared to have been winched onto the vehicle, and had flat tires. But the ATV had not been reported stolen. Later, an officer used the ATV's vehicle identification number (VIN) to identify the registered owner of the ATV and learned that the ATV had been stolen from a cabin in Aitkin County. Respondent State of Minnesota charged Liimatainen with aiding and abetting receiving stolen property. The case was tried to a jury.

At trial, Deputy Radzak testified that he stopped the pickup truck at approximately 4:30 a.m. on January 14. It was cold and snowing, and the road conditions were poor. He first noticed the truck when it was stopped at a stop sign. The truck's passenger door was open, and a man was standing outside of the truck. Deputy Radzak made a U-turn to see if the truck's occupants needed assistance. By the time Deputy Radzak completed his U-turn, the passenger had returned to the truck, and the truck was moving down the

highway. Deputy Radzak stopped the truck because the taillights on the trailer were not illuminated.

As Deputy Radzak approached the pickup truck, the ATV aroused his suspicion. It was not secured with tie-down straps. Its tires were flat or low. It did not have registration stickers. And, it appeared to have been winched onto the trailer. Deputy Radzak testified that the ATV "seemed out of place."

Dobosenski told Deputy Radzak that he and Liimatainen knew the trailer lights were out and that they were trying to fix the lights when Deputy Radzak saw them stopped at the intersection. Deputy Radzak asked about the ATV, remarking that it lacked registration stickers and that its tires were flat. Dobosenski said that the ATV belonged to a friend of theirs, J.J.K., and that they were staying at J.J.K.'s cabin.

Deputy Radzak identified Dobosenski and Liimatainen by their driver's licenses. He asked them where J.J.K.'s cabin was located. Both Dobosenski and Liimatainen gave vague descriptions, one stating that "it's over by Kettle River" and the other stating that "it's just outside of Kettle River." Both Dobosenski and Liimatainen told Deputy Radzak they were bringing the ATV, on J.J.K.'s behalf, to RJ Sport & Cycle for repairs.

Deputy Radzak called Moose Lake Police Officer Jason Syrett to the scene to locate the ATV's VIN. Officer Syrett located the VIN and took a picture of it with his cell phone. Deputy Radzak and Officer Syrett asked the Carlton County and state-patrol dispatchers to check the VIN. The dispatchers determined that the ATV had not been reported stolen, but neither dispatcher had access to the Minnesota Department of Natural Resources' (DNR's) database to identify the owner. Because Deputy Radzak had no

3

reason to continue the stop, he returned Dobosenski's and Liimatainen's driver's licenses and asked them to pull over at a safe location to fix the trailer's taillights.

Officer Syrett testified that, 12 days after the traffic stop, a DNR officer was at the Moose Lake Police Department. Officer Syrett asked him to search the DNR's database for the ATV's VIN to identify the owner. The search revealed that K.M. owned the ATV. Officer Syrett called K.M. and told him about the traffic stop involving his ATV. K.M. was upset and told Officer Syrett that he did not know that the ATV had been removed from his cabin.

K.M. testified that he did not give anyone permission to use his ATV and does not know Dobosenski or Liimatainen. K.M. testified that after receiving the phone call from law enforcement, he drove to the property where he kept his ATV. He observed that someone had broken into the pole barn where he stored the ATV and that the ATV had been moved to the yard. The license plate was torn off, which pulled the fender from the frame. The ATV's fuel tank was empty, and the fuel line had been pulled off.

Carlton County Deputy Douglas Juntunen testified that he drove to Liimatainen's sister's house to find Liimatainen. Two other officers knocked at the front door, and no one answered. While he was there, a red pickup truck approached the driveway and slowed down. After Deputy Juntunen made eye contact with the passenger, the passenger leaned backward and slouched down in the seat. Deputy Juntunen stopped the truck and recognized the passenger as Liimatainen.

Carlton County Lieutenant Rick Lake testified that he investigated the case and learned that the truck that was pulling the ATV on January 14 belonged to Liimatainen's

4

mother. Lieutenant Lake interviewed Liimatainen in the Carlton County jail. Lieutenant Lake testified that he asked Liimatainen several times if he was a passenger in a vehicle driven by Dobosenski on January 14. Liimatainen denied being with Dobosenski and suggested that someone must have stolen his driver's license.

Liimatainen testified in his own defense. Contrary to what he told Lieutenant Lake, Liimatainen testified that he was with Dobosenski on January 14 and that he believed that Dobosenski inherited the ATV from his grandfather. He testified that they were transporting the ATV to Dobosenski's grandmother's house and doing some other chores. He became suspicious after Dobosenski told Deputy Radzak they were coming from J.J.K.'s cabin. After Deputy Radzak let them go, he told Dobosenski that he did not want to know "what's going on with [him]" and made Dobosenski take him home. He also told Dobosenski to remove the ATV from his mother's pickup truck.

Liimatainen testified that he denied being a passenger with Dobosenski during his interview with Lieutenant Lake because Lake asked him if he recalled being stopped in a gray pickup by a bunch of patrol cars, whereas he and Dobosenski were stopped in a blue pickup by one patrol car. Liimatainen testified that he never touched the ATV, he did not help Dobosenski load the ATV onto the pickup, and he did not know the ATV was stolen.

The jury found Liimatainen guilty. The district court sentenced Liimatainen to serve 19 months in prison, stayed execution of sentence, and placed Liimatainen on probation for three years. Liimatainen appeals, arguing that the evidence was insufficient to sustain the jury's verdict.

When reviewing a jury verdict, an appellate court considers whether the legitimate inferences drawn from the evidence would permit a jury to conclude that the defendant was guilty beyond a reasonable doubt. *State v. Pratt*, 813 N.W.2d 868, 874 (Minn. 2012). Review is limited to a close analysis of the record to determine whether the evidence, when viewed in the light most favorable to the conviction, is sufficient to allow the jury to reach the verdict that it did. *State v. Webb*, 440 N.W.2d 426, 430 (Minn. 1989). The reviewing court must assume "the jury believed the state's witnesses and disbelieved any evidence to the contrary." *State v. Moore*, 438 N.W.2d 101, 108 (Minn. 1989). The reviewing court will not disturb the verdict if the jury, acting with due regard for the presumption of innocence and the requirement of proof beyond a reasonable doubt, could reasonably conclude the defendant was guilty of the charged offense. *Bernhardt v. State*, 684 N.W.2d 465, 476-77 (Minn. 2004).

The parties agree that this is a circumstantial-evidence case. An appellate court applies heightened scrutiny when reviewing a verdict based on circumstantial evidence. *Pratt*, 813 N.W.2d at 874. Minnesota courts employ a two-step process when reviewing convictions based on circumstantial evidence. *State v. Andersen*, 784 N.W.2d 320, 329 (Minn. 2010). First, the reviewing court identifies the circumstances proved. *Id.* In doing so, the court views the evidence "in the light most favorable to the verdict." *Pratt*, 813 N.W.2d at 874. The court defers to the fact-finder's acceptance and rejection of evidence and to its credibility determinations. *Andersen*, 784 N.W.2d at 329; *see also State v. Hughes*, 749 N.W.2d 307, 312 (Minn. 2008) (stating that juries are "in the best

6

position to weigh the credibility of the evidence and thus determine which witnesses to believe and how much weight to give their testimony").

Next, the reviewing court examines the reasonableness of the inferences that can be drawn from the circumstances proved, including inferences of innocence, as well as guilt. *Andersen*, 784 N.W.2d at 329. All of the circumstances proved must be consistent with guilt and inconsistent with any other rational hypothesis negating guilt. *Id.* at 330. The reviewing court does not defer to the fact-finder's choice between rational hypotheses. *Id.* at 329-30. Appellate courts "view the circumstantial evidence as a whole, not as isolated facts." *State v. Hurd*, 819 N.W.2d 591, 599 (Minn. 2012). The "[s]tate does not have the burden of removing all doubt, but of removing all reasonable doubt." *State v. Al-Naseer*, 788 N.W.2d 469, 473 (Minn. 2010). Lastly, a rational hypothesis negating guilt must be based on more than mere conjecture or speculation. *Andersen*, 784 N.W.2d at 330.

Liimatainen was convicted under Minnesota Statutes section 609.53, subdivision 1, which provides that "any person who receives, possesses, transfers, buys or conceals any stolen property or property obtained by robbery, knowing or having reason to know the property was stolen or obtained by robbery" is guilty of receiving stolen property. Minn. Stat. § 609.53, subd. 1 (2012). "A person is criminally liable for a crime committed by another if the person intentionally aids, advises, hires, counsels, or conspires with or otherwise procures the other to commit the crime." Minn. Stat. § 609.05, subd. 1 (2012). "[T]he element of 'intentionally aiding' embodies two important and necessary principles: (1) that the defendant knew that his alleged

7

accomplices were going to commit a crime, and (2) that the defendant intended his presence or actions to further the commission of that crime." *State v. Milton*, 821 N.W.2d 789, 805 (Minn. 2012) (quotation omitted).

In this case, the circumstances proved are as follows. Liimatainen was a passenger in his mother's truck, which Dobosenski was driving. They were hauling an ATV on a trailer at 4:30 a.m. in cold, snowy weather. The ATV did not have tie-down straps, its tires were flat or low, and it did not have registration stickers. The ATV appeared to have been winched onto the trailer. K.M. owned the ATV, he had not given anyone permission to use it, and he did not know Dobosenski or Liimatainen. Liimatainen corroborated Dobosenski's false statements to Deputy Radzak by providing a vague description of the location of J.J.K.'s cabin and by telling Deputy Radzak that they were bringing the ATV, on J.J.K.'s behalf, to RJ Sport & Cycle for repairs. During an interview with Lieutenant Lake, Liimatainen denied he was with Dobosenski when Deputy Radzak stopped the pickup truck that was hauling the ATV.

The circumstances support a rational hypothesis that Liimatainen knew that Dobosenski possessed a stolen ATV and that Liimatainen intended his corroboration of Dobosenski's false statements regarding the ATV to further the commission of the crime. Moreover, Liimatainen's later denial that he was a passenger in the pickup truck at the time of the traffic stop is evidence of his consciousness of guilt. *See Eggersgluss v. Comm'r of Pub. Safety*, 393 N.W.2d 183, 185 (Minn. 1986) (stating that a suspect's "lack of truthfulness" in response to an officer's questions showed consciousness of guilt).

Liimatainen argues that "[m]ere presence at the crime scene alone is not sufficient to prove that a person aided or advised, because inaction, knowledge, or passive acquiescence does not rise to the level of criminal culpability." *State v. Hollins*, 765 N.W.2d 125, 129 (Minn. App. 2009). But Liimatainen was not a passive observer at the crime scene. He intentionally aided Dobosenski by corroborating Dobosenski's lies to Deputy Radzak.

Liimatainen also argues that his "presence in the truck was entirely consistent with the rational hypothesis that he believed he was helping Dobosenski with the morning chores and that Dobosenski had the right to transport the ATV." Liimatainen presented that theory of innocence to the jury. He testified that he never touched the ATV, he did not help Dobosenski load the ATV onto the pickup, and he did not know the ATV was stolen. The jury's guilty verdict shows that it did not believe Liimatainen.

"The [jury] is in the best position to determine credibility and weigh the evidence . . . ." *Pratt*, 813 N.W.2d at 874. "[The jury] evaluates the credibility of witnesses and need not credit a defendant's exculpatory testimony." *State v. Hough*, 585 N.W.2d 393, 396 (Minn. 1998). Questions regarding "which witnesses or conflicting evidence to believe are for the jury even in cases built entirely on circumstantial evidence." *State v. Tscheu*, 758 N.W.2d 849, 858 (Minn. 2008). We therefore defer to the jury's rejection of Liimatainen's testimony. Liimatainen points to no other record evidence to support his alternative theory of innocence. We will not reverse Liimatainen's circumstantial-evidence conviction on the basis of mere conjecture. *See id.* (stating that to successfully challenge a verdict based on circumstantial evidence, a defendant may not rely on mere

conjecture and instead must "point to evidence in the record that is consistent with a rational theory other than guilt").

Lastly, we reject Liimatainen's argument that the evidence in this case is not sufficient to sustain his conviction under *State v. Ulvinen*. In *Ulvinen*, the supreme court held that the evidence was not sufficient to sustain an aiding-and-abetting conviction where a mother assisted her son after he murdered his wife. *State v. Ulvinen*, 313 N.W.2d 425, 428 (Minn. 1981). The mother acted as a lookout while her son dismembered the body, washed blood from items in the bathroom, and corroborated her son's false story to the police. *Id*. at 426. The circumstances in *Ulvinen* are distinguishable from those in this case because the mother was asleep when her son committed the murder. *Id*. at 428. Unlike the mother in *Ulvinen*, Liimatainen was with Dobosenski while Dobosenski committed the crime, that is, while he possessed the stolen ATV. And Liimatainen aided Dobosenski's possession by lying to Deputy Radzak.

In sum, because the jury, acting with due regard for the presumption of innocence and the requirement of proof beyond a reasonable doubt, could reasonably conclude that Liimatainen aided and abetted Dobosenski to possess stolen property, we do not disturb the verdict.

**Affirmed.**